# IN THE COURT OF APPEALS OF IOWA

No. 15-0930
Filed February 10, 2016

**IN THE INTEREST OF B.B.E.,**
    **Minor Child,**

**KENNETH P. NELSON,**
    Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.


The guardian and custodian of the minor child and the guardian ad litem and attorney of the minor child appeal from an order dismissing the mother's application to terminate the mother and father's parental rights to the minor child pursuant to Iowa Code chapter 600A (2015).  **REVERSED AND REMANDED.**


Kenneth P. Nelson of Nelson Law Firm, P.L.L.C., Waterloo, guardian and custodian of B.B.E.

Jennifer L. Chase of Ball, Kirk & Holm, P.C., Waterloo, guardian ad litem and attorney for B.B.E.


Considered by Danilson, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

This case arises out of the mother's efforts to terminate her rights and the biological father's rights in their son for the purpose of facilitating adoption of the child. At the termination hearing, the mother testified that it was in her son's best interest "to stay with the adoptive parents where he's got a future and a life ahead of him that neither of us [the biological parents] would be able to give him." The district court concluded the grounds for termination of the father's rights had not been proved. The mother's request for and consent to the termination of her parental rights was contingent upon termination of the father's parental rights. Accordingly, the district court dismissed the mother's petition to terminate parental rights. The child's guardian and custodian and guardian ad litem timely filed this appeal. The father has not filed any brief in this appeal.

In the spring of 2014, the mother and father had a "fling." The mother testified "[t]here was no dating involved . . . We maybe saw each other a couple of times and that was it. Nothing, nothing relationship-wise." After the fling, the mother found out she was pregnant, and she notified the father. The father attended the mother's first prenatal appointment. After that appointment, via text messages exchanged on July 1, 2014, the mother and father communicated regarding the mother's second prenatal appointment and the future of the child. The mother stated she did not want the father to attend the second appointment because his presence made her uncomfortable. The text messages show the mother already had communicated to the father that she wanted to place the child for adoption and that the father had communicated his disagreement.

During this text message exchange, the mother asked the father to "[q]uit speaking to me." The father replied, "Guess when you grow up txt me if not then I guess my lawyer will just get ahold of u in 8 months." The mother responded, "Yeah good luck with that." The father responded, "Ok atleast [sic] take care of urself and my kid as ling [sic] as u have it." The mother and the father had no further communication after that date. At approximately the same time, the father was in the process of reconciling and moving back in with his on-again, off-again, live-in girlfriend, who, the father learned, was also pregnant with the father's child.

The child at issue, B.B.E., was born in January 2015. The child was released from the hospital to the custody of his prospective adoptive parents, who live in Maryland. In January 2015, the mother filed a petition to terminate her parental rights and the father's parental rights for the purpose of facilitating the child's adoption. The child's guardian and custodian joined as a co-petitioner. The petitioners contended the father had abandoned the child pursuant to Iowa Code section 600A.8(3) and (4). The district court concluded the petitioners failed to prove the father abandoned the child. Specifically, the district court concluded the mother diligently attempted to alienate the father from the child by disallowing the father's presence at medical appointments and ceasing communication with the father. The district court concluded the mother "has unilaterally decided that the child would be placed for adoption." Our review is de novo. *See In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

In a private termination proceeding, the petitioners must establish by clear and convincing evidence the statutory ground or grounds authorizing the termination of parental rights. *See* Iowa Code § 600A.8; *R.K.B.*, 572 N.W.2d at 601-02. If the statutory ground or grounds are proved, the petitioners must also prove termination of parental rights is in the best interests of the child. *See* Iowa Code § 600A.8; *R.K.B.*, 572 N.W.2d at 602. While the best interests of the child is the primary concern of the termination proceeding, the interests of the parents shall be given due consideration. *See* Iowa Code § 600A.1; *R.K.B.*, 572 N.W.2d at 602.

Abandonment of a minor child is one of the grounds authorizing the termination of parental rights under Iowa Code chapter 600A. *See* Iowa Code § 600A.8(3). Chapter 600A defines abandonment of a minor child as "reject[ing] the duties imposed by the parent-child relationship . . ., which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(19). Specifically, as was the case here:

> If the child is less than six months of age when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent does *all* of the following:
>
> (a) Demonstrates a willingness to assume custody of the child rather than merely objecting to the termination of parental rights.
> (b) Takes prompt action to establish a parental relationship with the child.
> (c) Demonstrates, through actions, a commitment to the child.

Iowa Code § 600A.8(3)(a)(1) (emphasis added). In making the determination of whether the petitioners have proved abandonment, the court may also consider any or all of the following:

> (a) The fitness and ability of the parent in personally assuming custody of the child, including a personal and financial commitment which is timely demonstrated.
> (b) Whether efforts made by the parent in personally assuming custody of the child are substantial enough to evince a settled purpose to personally assume all parental duties.
> (c) With regard to a putative father, whether the putative father publicly acknowledged paternity or held himself out to be the father of the child during the six continuing months immediately prior to the termination proceeding.
> (d) With regard to a putative father, whether the putative father paid a fair and reasonable sum, in accordance with the putative father's means, for medical, hospital, and nursing expenses incurred in connection with the mother's pregnancy or with the birth of the child, or whether the putative father demonstrated emotional support as evidenced by the putative father's conduct toward the mother.
> (e) Any measures taken by the parent to establish legal responsibility for the child.
> (f) Any other factors evincing a commitment to the child.

Iowa Code § 600A.8(3)(a)(2).

On de novo review, in light of the statutory factors, we conclude the petitioners proved by clear and convincing evidence the father abandoned the child within the meaning of the Code. During the period of the pregnancy, the father took no action to demonstrate his commitment to the child. The father attended a single medical appointment with the mother and then had no further communication with her. Although the father had gainful employment at Polaris Industries and medical insurance, he did not provide any financial assistance to the mother or child. Although the father was aware the mother wanted to put the

child up for adoption, he did not obtain counsel or take any other action to protect his rights in the child.

After the child's birth, the father took no action demonstrating any interest in establishing a relationship with the child or assuming custody of the child. He did not register with the Iowa Paternity Registry. At trial, the father did not know the date of the child's birth although he was made aware of the child's birth through one of the mother's friends. He did not file an action for custody of the child. He did not make a request for visitation with the child. He has not asked for any photos or videos of the child. He admitted he has never even "inquired as to the child's well-being." The father admitted, when he was interviewed by the child's guardian ad litem, he never asked about "how the child was doing" or asked about the child's health. The father never requested any information about the prospective adoptive parents. He did not know who they are, where they lived, what they did for a living, and how they cared for the child. When asked what action he took after learning of the birth of the child, the father testified he tried texting the mother but the text did not go through. "When opportunities for association with a child are few, they become more precious, and the spurning of them more egregious. If few opportunities for association are available, spurning all of them will suffice for a showing of abandonment." *In re M.M.S.*, 502 N.W.2d 4, 7 (Iowa 1993).

The district court concluded termination was not warranted under these circumstances because the mother precluded the father from taking action by changing her phone number and blocking the father from her Facebook account.

We disagree. The mother testified credibly that her phone number was changed because she failed to cause her new service provider to port her old phone number. The mother explained she denied the father and the father's pregnant, live-in girlfriend access to the mother's Facebook account because of negative comments being posted about the mother. Regardless, with respect to the father's actions, firing text messages and Facebook messages into the electronic ether with the knowledge that the messages are not being received is insufficient to demonstrate "a willingness to assume custody of the child," "prompt action to establish a parental relationship with the child," or "a commitment to the child." Iowa Code § 600A.8(3)(a)(1); *see In re G.B.*, No. 14-1691, 2015 WL 4493354, at *5 (Iowa Ct. App. Jul. 22, 2015) (explaining a few phone calls and Facebook messages are not enough); *In re K.M.*, No. 14–1374, 2015 WL 1849508, at *6 (Iowa Ct. App. Apr. 22, 2015) ("A few sporadic text messages over the period of a few months . . . do not rise to any sort of meaningful contact that may fend off a claim of abandonment, particularly given the father did not attempt any other type of communication—or offer financial or emotional support—to K.M."); *In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) (affirming termination order where the father communicated with the mother via "sporadic text messages" over the course of several months and made no attempts to follow up); *In re D.S.P.*, No. 09–1188, 2010 WL 445690, at *3 (Iowa Ct. App. Feb. 10, 2010) (holding the father abandoned his daughter when he "largely gave up" on communication after his first attempts were unsuccessful). As we explained in a similar case:

> "The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a

parent." Iowa Code § 600A.1. As set forth above, S.B. has made no affirmative effort to contact or communicate with J.N. or make any inquiry as to his well-being since the child's birth. The juvenile court stated that "while it is clear that [S.B.] has not asked for information about the child, it is equally clear that [K.N.] has not voluntarily provided any." First, we do not wholly agree with this finding. . . . Second, the court's comment seems to suggest that following J.N.'s birth K.N. had some greater burden than S.B. to assure that S.B. had information regarding the child or to force contact between the two. We cannot agree. S.B. is an adult and once aware of J.N. he bore equal responsibility for affirmatively assuming the duties encompassed in the role of parenting. Accordingly, due to S.B.'s complete lack of any affirmative action to assume the duties encompassed in parenting we believe it is in J.N.'s best interest that S.B.'s parental rights be terminated.

*In re J.K.N.*, No. 08-2069, 2009 WL 1677000, at *4 (Iowa Ct. App. Jun. 17, 2009).

The father's effort to establish a relationship with or assume custody of the child is particularly lacking given several other significant facts. First, the father attended the first prenatal visit with the mother and should have known who and where the mother's doctor was located. At trial, the father excused his follow up by stating he did not take any notes. Second, the father and the mother shared mutual friends and acquaintances, but the father made no serious effort to contact the mother after the July 1 text message exchange. Third, the father and the father's girlfriend knew the mother worked at Menard's, but the father did not try to contact the mother there. At trial, the father testified he "[c]ouldn't see it viable." Fourth, the father knew he worked the same shift with the mother's mother at Polaris. Yet, he made no effort to inquire about the mother or the child. Finally, by the time of trial in this case, the mother also worked at Polaris with the father, but the father still had not made any effort to contact the mother and discuss the situation. Demonstrating a commitment to a child requires more than

pecking away at one's phone every once in a while and then giving up when no response is received. "An abandoned child is no less abandoned because the parent can rationalize a reason for the abandonment." *M.M.S.*, 502 N.W.2d at 7.

While the father may wish to maintain a relationship with the child, he has not taken any action manifesting such intent. "The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts . . . manifesting such intent, does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c). We conclude the father has by all objective evidence abandoned B.B.E. *See G.A.*, 826 N.W.2d at 128-29 (recognizing that a parent's subjective intent does not preclude a finding of abandonment); *In re C.J.F.M.*, No. 10–0166, 2010 WL 3157756, at *2 (Iowa Ct. App. Aug. 11, 2010) (recognizing the "intention to abandon is no longer a statutory element in the definitions of Iowa Code chapter 600A").

Once the statutory requirements for termination have been met, the petitioners must also show that the termination of parental rights is in the best interest of the child. *See R.K.B.*, 572 N.W.2d at 602. Chapter 600A provides:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Iowa Code § 600A.1. The Iowa Supreme Court has found the statutory best interest factors in chapter 232 termination cases relevant to chapter 600A

termination cases. *See In re A.H.B.*, 791 N.W.2d 687, 690 (Iowa 2010). The child's "emotional and psychological health" is an important consideration. *Id.* (citing Iowa Code § 232.116(2)). Weight is also given to the "closeness of the parent-child bond." *Id.* at 691 (citing Iowa Code § 232.116(3)(c)).

We conclude termination of the parents' rights in B.B.E. is in the best interest of the child. The child is thriving in the prospective adoptive parents' care. The prospective parents have two other children—a daughter, age six, and a son, age three. The prospective siblings sing to and play with the child. The prospective mother does not work outside the home so she can spend more time with the children. She worked with a lactation consultant to nurse B.B.E. and enhance the parent-child bond. The prospective parents take the child to music class and to the pool for water play time. The prospective parents have agreed to send an update on the child's status to the mother every six months until the child is six and every year after that and to send the father the same information. The prospective adoptive family, including the children, has bonded with the child. It is the family the child has known since leaving the hospital.

In contrast, the biological parents could not provide similar stability or care. The mother has not had stable employment or a stable residence for some period of time. The mother also has had another child removed from her care by the Department of Human Services. The father's living arrangements have also not been terribly stable, as he has vacated the family residence after fights with his live-in girlfriend. The father testified he has some criminal history. He was convicted of possession of alcohol as a minor and theft in the fifth degree. He

pleaded guilty to criminal mischief and trespassing. In 2014, the father was charged with felony domestic abuse assault, impeding air/blood flow causing bodily injury. He received a deferred judgment and successfully completed probation for that offense. The father testified at trial he continues to have arguments with his girlfriend that cause him to leave the home overnight to calm down. The mother also testified she intends to move to Arkansas to be closer to some of her relatives. The biological parents will thus find themselves in a custody dispute with only one parent having any significant time with the child and the other parent having visitation.

"The evidence shows terminating . . . parental rights so the child can be adopted gives primary consideration to the child's safety and is the best placement for furthering [his] long-term nurturing and growth, as well as the placement that will cater to the child's physical, mental, and emotional needs." *In re S.A.B.*, No. 13-1718, 2014 WL 2885322, at *3 (Iowa Ct. App. June 25, 2014). For the foregoing reasons, we reverse the judgment of the district court and remand this matter for entry of an order terminating the biological mother and biological father's parental rights.

**REVERSED AND REMANDED.**