# IN THE COURT OF APPEALS OF IOWA

No. 16-1373
Filed December 21, 2016

**IN THE INTEREST OF M.H.-T.,**
**Minor child,**

**N.H.-T., Mother,**
    Petitioner-Appellant,

**M.J., Father,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A mother appeals the district court's denial of her petition to terminate the father's parental rights. **AFFIRMED.**

Dorothy L. Dakin of Kruse & Dakin, L.L.P., Boone, for appellant mother.

Kimberly A. Voss-Orr of Law Office of Kimberly A. Voss-Orr, Ames, for appellee father.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**VOGEL, Presiding Judge.**

A mother appeals the district court's denial of her petition to terminate the parental rights of the father of her child, born November 2011. The mother claims she satisfied her burden to prove by clear and convincing evidence the father abandoned the child as outlined in Iowa Code section 600A.8(3)(b)(1)-(3) (2015). She also asserts she proved termination was in the child's best interests.[1]

We review proceedings to terminate parental rights de novo. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). We give deference to the factual findings of the district court, especially its determinations of credibility, but we are not bound by them. *Id.* Our primary focus is the best interests of the child. *Id.*

Iowa Code section 600A.8(3)(b) provides the juvenile court can terminate a person's parental rights when:

> 3. The parent has abandoned the child. For the purposes of this subsection, a parent is deemed to have abandoned a child as follows:
>     . . . .
>     b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

---

[1] The father waived his right to file an appellee brief in this case, stated he agreed with the district court's ruling, and urged us to affirm. "When the appellee fails to file a brief, we 'handle the matter in a manner most consonant with justice and [our] own convenience.'" *White v. Harper*, 807 N.W.2d 289, 292 (Iowa Ct. App. 2011) (alteration in original) (citation omitted). "[W]e will not search the record for a theory to uphold the decision of the district court, but will 'confine [ourselves] to the objections raised by the appellant,'" and "we will not go beyond the ruling of the trial court in searching for a theory upon which to affirm its decision." *Id.* (second alteration in original) (citation omitted).

(1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

To abandon a child under chapter 600A means the parent has rejected "the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(19).

> Two elements are necessary to show abandonment: the conduct of the parent in giving up parental rights and responsibilities and the parent's intent to do so. A parent may evince an intent to abandon the child even though the parent subjectively maintains an interest in the child if that interest is not accompanied by 'affirmative parenting to the extent practical and feasible in the circumstances.'"

*In re C.A.V.*, 787 N.W.2d 96, 101 (Iowa Ct. App. 2010) (citations omitted).

The facts of this case indicate the mother informed the father of the pregnancy in February 2011, and the father demanded the mother obtain an abortion. The mother agreed, though she testified she never intended to obtain an abortion. In May 2011, while pregnant, the mother and father were involved in an altercation in the parking lot of a mall. The father pled guilty to assault, and a no-contact order was entered prohibiting the father from contacting the mother or her immediate family members. The no-contact order was last extended until

June 2019. However, the no-contact order did not prohibit communication through legal counsel.

The child was born in November 2011, but the mother refused to put the father's name on either the birth certificate or the documents to apply for Title XIX health coverage for the child. The father testified he became aware of the child in December of 2012. After learning of the birth of his child, the father obtained counsel and filed a paternity action in April 2013 pursuant to Iowa Code chapter 600B. He sought to obtain DNA testing and for his name to be entered on the birth certificate. The mother filed an answer, which agreed to the testing, asked for child support, and requested any visitation between the father and child be supervised.

While paternity was established via DNA testing, the paternity action otherwise languished at the district court. Trial was continued multiple times at the request of both parties. No temporary support order was entered or even requested. The father made no request for visitation. However, in March 2015, the court was informed the parties had reached an agreement that provided the father would begin to pay $245 per month in support and an expert evaluation regarding visitation would be obtained. The court directed the mother's counsel to draft and file the agreement. However, it appears the mother refused to sign the agreement. The mother's attorney informed the court of a deterioration in his relationship with the mother, and he sought to withdraw from representation.

The mother obtained alternate counsel and filed a petition to terminate the father's parental rights for abandonment under Iowa Code chapter 600A in June

2015. Thereafter, the paternity action was placed on hold until the termination action was resolved.

After hearing testimony and receiving exhibits, including filings from the paternity action, the district court denied the mother's termination petition in July 2016, concluding the mother failed to prove abandonment by clear and convincing evidence. The court found the mother failed to prove the father had the ability to pay support or prove the father was able to maintain contact with the child in light of a no-contact order in place protecting the mother and her immediate family. It also concluded that, while best interests need not be considered in light of the mother's failure to establish abandonment, the child's best interests would not be served by termination because it would cut off a potential avenue for financial support, there was no person standing ready to adopt the child, and the child would be deprived of an opportunity to develop a relationship with the father.

It is undisputed that the father has never had any contact with the child and has never provided any financial support. While there was a no-contact order in place, this order did not prohibit contact through legal counsel. The father could have voluntarily started paying financial support, sent cards or gifts through counsel, and made a request for visitation.[2] The termination court faulted the mother for not proving the father had the financial ability to pay support. However, the mother entered into evidence the child support worksheets the father prepared and filed in the paternity action that show he had

---

[2] The first request for visitation from the father in the paternity action came the Friday before the termination trial began—more than three years after the paternity action was filed.

the ability, based on his own reported earnings, to pay $245 per month in child support. While the district court had found the father indigent in the termination proceeding with respect to the appointment of counsel, that does not equate to an inability to provide some sort of financial support for one's child. There was a no-contact order in place, prohibiting contact between the father and the mother's immediate family, which therefore included the child, but that order alone does not excuse the lack of support or contact—efforts could have been made through counsel or through motions filed in the paternity action. *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012) (noting a Texas protective order did not prevent a finding of abandonment).

While we disagree with the district court's conclusion the mother failed in her burden of proof to establish the father had the ability to provide support, we agree the grounds for termination were not established here by clear and convincing evidence. The father testified he did not pay support earlier on the advice of his counsel, who told him to wait for the court to officially order him to pay support in the paternity action. *But see id.* at 710–11 (noting the mother "had a parental obligation to support her children financially, whether or not the district court ordered it"). In March 2015, it appears the parties had reached an agreement as to financial support and the path forward to determine if visitation would be appropriate. The mother refused her counsel's requests to approve the terms of the settlement agreement and instead obtained alternate counsel to pursue the termination of the father's rights. The mother cannot argue the father's actions in failing to support the child and failing to contact the child should result in a finding of abandonment when the mother prevented such

support and contact. *See* Iowa Code § 600A.8(3)(b)(1) (noting a parent must visit the child at least monthly "when not prevented from doing so by the person having lawful custody of the child").

The father's actions in obtaining counsel and filing the paternity actions within months of learning he was likely the father of the child showed he did not have the intent to abandon the child. In addition, the mother's failure to follow through on the paternity settlement agreement shows her intent to prevent the father from being a part of the child's life. Because we conclude the mother failed to prove the father had the intent to abandon the child, we agree termination in this case is inappropriate. We therefore affirm the order of the district court.

**AFFIRMED.**