# IN THE COURT OF APPEALS OF IOWA

No. 17-1041
Filed March 7, 2018

**IN THE INTEREST OF M.E.,**
**Minor Child,**

**L.E., Father,**
    Petitioner-Appellee,

**J.P., Mother,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Marshall County, Paul G. Crawford,

District Associate Judge.


    A mother appeals the juvenile court's order terminating her parental rights

under Iowa Code chapter 600A. **AFFIRMED.**


    Jennie L. Wilson-Moore of Wilson Law Firm, Conrad, for appellant mother.

    Melissa A. Nine of Nine Law Office, Marshalltown, for appellee father.


    Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

A mother, Jill, appeals the juvenile court's order terminating her parental rights to her now seven-year-old son, M.E. The court granted the petition filed by M.E.'s father, Luke, who alleged Jill abandoned their son within the meaning of Iowa Code section 600A.8(3)(b) (2015). The court found Jill's use of illicit drugs and criminal conduct rendered her unavailable as a parent to M.E. Jill now argues the court was mistaken in finding she did not maintain "substantial and continuous or repeated contact" with M.E. She blames Luke's actions, not her own incarceration or addiction, for her infrequent interactions with their son. After reviewing the record independently,[1] we find clear and convincing evidence supporting the juvenile court's decision to terminate Jill's parental rights.

## I. Facts and Prior Proceedings

Jill and Luke dated but never married. Jill gave birth to M.E. in October 2010. Jill first informed Luke he might be the father in January 2011 while Luke was deployed to Afghanistan. On leave the next month, Luke took a paternity test confirming he was M.E.'s father. Jill was M.E.'s primary caregiver until he was about one year old. Luke and Jill jointly cared for M.E. briefly in late 2011, but by January 2012, Luke took over the child-rearing responsibilities.

---

[1] Our review of chapter 600A termination-of-parental-rights proceedings is de novo. *See In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). "We give deference to the factual findings of the juvenile court, especially those relating to witness credibility, but we are not bound by those determinations." *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We give "due consideration" to the interests of the parents, but the child's best interests are "paramount" in our analysis. *See* Iowa Code § 600A.1.

Jill admits to having a "bad addiction" to opiates and heroin. Luke started caring for M.E. on his own following an incident in which Luke and Jill's father requested police assistance to prevent Jill from taking M.E. They reported Jill had been living with another drug addict with a lengthy criminal history. Later in 2012, Jill had several arrests for possession of controlled substances and spent time in jail. She also entered inpatient-substance-abuse treatment, but did not complete the program. She had little contact with Luke and M.E. during that year. In 2013, Jill attended a court-ordered, dual-diagnosis treatment program but did not successfully complete the after-care sessions. Luke did not hear from Jill for long stretches during 2013. In October 2013, the district court held a custody hearing, but Jill did not appear. The district court issued an order placing M.E. in Luke's physical care and granting Jill supervised visitation. The decree specified Jill was not allowed unsupervised visits until she could provide hair follicle tests that were negative for all illegal and non-prescribed drugs for a period of six months. The decree did not require Jill to pay child support.

In 2014, Jill had additional legal troubles, including flight from an arrest warrant in March. She incurred a new drug-possession charge in April. She left a drug rehabilitation program after just four days and ended up serving a prison term at the Iowa Correctional Institute for Women in Mitchellville. She was released in November 2014. On January 24, 2015, Luke and his wife, Lauren, allowed Jill to have a supervised visit with M.E. Luke and Lauren did not know Jill had tested positive for opiates and methamphetamine four days earlier. Because of the violation, a warrant issued for Jill's arrest on January 28. She evaded arrest until September 2015. Luke testified Jill did not contact him and M.E. while she was

"on the run." In October 2015, Jill was sentenced to serve an indeterminate two-year prison term. That same month, Luke filed a petition asking to terminate Jill's parental relationship with M.E.

Jill was released from prison in December 2015. M.E. told Luke that he saw Jill when visiting his maternal grandparents around Christmas. A few weeks later, in January 2016, Jill gave birth to a second child; Luke was not the father, and Jill had not told him about the pregnancy. The baby tested positive for heroin at birth. Jill made two unsuccessful attempts at inpatient drug treatment in the spring of 2016. Jill returned to the Iowa Correctional Institute for Women in the fall of 2016. In November, Jill called Luke from prison and asked for telephone contact with M.E. They arranged for her to phone M.E. every Wednesday night, but Jill only called two or three times.

The juvenile court held a two-day hearing on Luke's petition in January 2017. Jill was still incarcerated at the time of the hearing. The court issued its order terminating Jill's parental relationship with M.E. in June 2017. She now appeals that order.

## II. Legal Analysis

### A. Abandonment

In his petition to terminate Jill's parental relationship with M.E., Luke alleged abandonment. "To abandon a minor child" means that a parent "rejects the duties imposed by the parent-child relationship." Iowa Code § 600A.2(19). That rejection "may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." *Id.* To establish that Jill abandoned M.E., Luke must

show she failed to maintain "substantial and continuous or repeated contact" with M.E. "as demonstrated by contribution toward support of the child of a reasonable amount," according to her means, and—because Jill did not live with M.E. in the year before the hearing—that she did not (1) visit with M.E. at least once a month when physically and financially able and when not prevented by Luke or (2) have regular communication with M.E. when physically and financially unable to visit or when visits were prevented by Luke. *See id.* § 600A.8(3)(b).

Jill argues her attempts to contact M.E. through Luke were "not rewarded with visits." Because of the animosity between her and Luke, Jill contends she contacted M.E. by telephone when he was visiting her parents.

Given her years of misplaced priorities, we find little merit in Jill's effort to blame Luke for her absence from M.E.'s life. She must take personal responsibility for her illicit drug use and criminal acts, "and cannot use such acts as a justification for [her] lack of relationship with the child." *See G.A.*, 826 N.W.2d at 129. The record shows that since 2012 Jill has failed to offer financial support for M.E. in a reasonable amount according to her means and has fallen short of maintaining steady or meaningful communication with her son.

Jill further contends abandonment is not necessarily a consequence of incarceration and argues she attempted to maintain telephone contact with M.E. But a parent cannot use incarceration as a justification for their lack of a relationship with the child. *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). During her 2016 incarceration, she arranged to call M.E. regularly but did not do so. Jill also failed to maintain substantial contact of any kind while she was "on the run" or not

in jail. Her failure to maintain steady and meaningful communication with M.E. has been a feature of most of M.E.'s life.

Further, the juvenile court disbelieved Jill's testimony that she had repeated telephone calls with M.E. when the child was visiting Jill's parents. Alternatively, the court opined even if Jill's testimony was true, "literally, 'phoning it in'" did not "meet the vision of being a parent." We share the juvenile court's assessment that Luke presented clear and convincing evidence of abandonment.

### B. Best Interests

Although Jill does not directly raise a best interests argument on appeal, she does contend she has a bond with M.E. When deciding if termination under chapter 600A is in the child's best interest, we borrow the analytical framework described in Iowa Code section 232.116(2) and (3). *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (prioritizing the child's safety and physical, mental, and emotional health). Despite M.E.'s connection to Jill, her criminal history and unaddressed substance abuse issues hinder her prospects for being a reliable parent. *See G.A.*, 826 N.W.2d at 131. Jill has not demonstrated the "fulfillment of financial obligations, . . . continued interest in the child, . . . genuine effort to maintain communication with the child, and . . . establishment and maintenance of a place of importance in the child's life" required to establish termination is not in M.E.'s best interests. Iowa Code § 600A.1. On the other hand, Luke's wife Lauren has stepped into a mothering role and is willing to adopt M.E. We find Luke has established by clear and convincing evidence that terminating Jill's parental rights would serve M.E.'s best interests.

**AFFIRMED.**