# IN THE COURT OF APPEALS OF IOWA

No. 19-1797
Filed January 9, 2020

**IN THE INTEREST OF E.M.,**
**Minor Child,**

**A.M., Mother,**
 Appellant,

**I.M., Grandfather,**
 Appellant.
_____


 Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block,

Associate Juvenile Judge.


 A mother appeals the termination of her parental rights to her nine-year-old

daughter; the girl's grandfather/custodian appeals the denial of a guardianship.

**AFFIRMED ON BOTH APPEALS.**


 Joseph G. Martin, Cedar Falls, for appellant mother.

 Mark A. Milder of Mark Milder Law Firm, Denver, for appellant grandfather.

 Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

 Tammy Banning, Waterloo, attorney and guardian ad litem for minor child.


 Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

We are concerned here with the future of nine-year-old E.M. Worries about her troubling behaviors and tenuous health led to her removal from home. She has been in family foster care since May 2018. In October 2019, the juvenile court issued an order terminating the rights of her mother, Azra. In that same order, the court refused to create a guardianship with E.M.'s grandfather, Izet.[1]

Both Azra and Izet appeal that order, urging a deferral of permanency for E.M. and guardianship over termination.[2] After independently reviewing the record, we reach the same conclusion as the juvenile court—termination of parental rights offered E.M. the best chance at a healthy and nurturing childhood.[3]

## I.     Facts and Prior Proceedings

In the spring of 2018, E.M.'s father—who lives in Bosnia—discovered what he believed to be a compromising photograph of his eight-year-old daughter posted on her grandfather's Facebook page. The father contacted Izet. The grandfather told investigators E.M. used his phone to access the internet and post

---

[1] The grandfather acted as the child's custodian while her mother was incarcerated. He fits the statutory definition of custodian. *See* Iowa Code § 232.2(11)(a) (2018). In recognition of that status, the juvenile court appointed him counsel in the child in need of assistance and termination cases.

[2] The juvenile court also terminated the parental rights of E.M.'s father, but he does not appeal. The State does not challenge the grandfather's standing to appeal the termination of the mother's parental rights. *But see In re T.N.*, No. 02-1633, 2002 WL 31641552, at *1 (Iowa Ct. App. Nov. 25, 2002) (holding grandmother, who intervened in termination case, lacked standing to appeal the order terminating parental rights). Because Azra and Izet raise the same issues, we will address them without regard to the grandfather's standing.

[3] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact findings, we give them weight, particularly on credibility issues. *Id.* The child's best interests remain our primary concern. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

the photograph when he was not paying attention. Izet testified "that was my big error."

But that was not his only error, according to the Iowa Department of Human Services (DHS). Even after the DHS admonished the grandfather and mother to monitor E.M.'s access to the internet, they failed to do so. The DHS discovered pornography available to the child through the grandfather's phone.

About a month later, the juvenile court ordered E.M. removed from Izet's care after she revealed that he touched "her breasts and privates" while helping her shower. The DHS also learned E.M. had been engaging in sexually inappropriate behavior at school. E.M. told social workers she could not live with her mother, Azra, because "her mother hits her and her mother's boyfriend hits her mother." Azra also had a history of substance abuse. In 2016, the DHS found Azra and her paramour responsible for denying critical care to E.M.'s sibling based on their methamphetamine abuse. Two years later, E.M. reported Azra and her friends were "poking themselves with needles in the home."

The State petitioned to have E.M. adjudicated as a child in need of assistance (CINA) in May 2018. In preparation for the CINA hearing, the Foster Care Review Board released a report discussing E.M.'s well-being. The report found the child was "doing well in the foster home but misses her family." The report also discussed the child's health concerns: "[E.M.] is overweight and pre-diabetic." The foster family sought help from a dietician. E.M. also had sleep difficulties because she needed her adenoids removed, but had not had the surgery because her mother would not sign the necessary permission form. In September 2018, the juvenile court adjudicated E.M. as a CINA, finding she had

been "exposed to pornography, substance abuse and significant supervision concerns."

E.M. remained in foster care for the duration of the CINA case. Azra's visitation with her daughter was sporadic. And her substance abuse was unabated. Azra tested positive for methamphetamine during her pregnancy with E.M.'s half-sister, who was born in April 2019. Based on her drug use, the district court revoked Azra's probation in the summer of 2019; she was released from prison just before the termination hearing.

Izet's supervised visitation with his granddaughter was more consistent but not always healthy. While in foster care, E.M. received diagnoses of tonsillar hypertrophy, enlarged tonsils, obstructive sleep apnea, abnormal weight gain, diabetes, and pediatric obesity. Specialists at the University of Iowa Hospital and Clinics saw her regularly for these conditions. Yet her grandfather denied she was overweight. He disregarded her dietary restrictions and was hostile with medical personnel. Izet also insisted E.M. should have a cell phone despite her dangerous use of social media when unsupervised.

The State petitioned for termination of Azra's parental rights in June 2019. In August, the court heard from social workers and the grandfather. Izet testified E.M. had a strong bond with him and it would in her best interest if he was her guardian and "her mom could play the role of mom." That view was not shared by the care coordinator who supervised visits between E.M. and Izet. She testified Izet would discuss inappropriate adult matters with E.M. during their interactions. She acknowledged Izet was making better food choices for E.M. but had not fully embraced the seriousness of E.M.'s health issues. The grandfather also had

personal health problems that resulted in him falling asleep during the visits. The care coordinator did not believe E.M. would be safe in her grandfather's care.

The juvenile court terminated Azra's parental rights under Iowa Code section 232.116(1), paragraphs (b), (e) and (f) (2019). Azra now appeals, but does not contest the statutory grounds for termination. Instead, she and Izet contend the juvenile court should have delayed permanency and placed E.M. in a guardianship with Izet.

## II.     Legal Analysis

## A.     Delay in Permanency

Both the mother and grandfather argue the juvenile court should have postponed termination under section 232.104(2)(b). Under that section, the court can only delay permanency if it can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." A parent's past performance gives insight into the future care they may provide. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

The mother and grandfather offer somewhat divergent predictions about family reunification. Azra argues that Izet "should be credited with the effort that he has made up to this point, and given additional time to work towards reunification." In contrast, Izet asserts: "Absent any intervening events, the mother would be available to parent the child on a full-time basis within the near future."

We do not find that either prospect is realistic on this record. Azra has not meaningfully engaged in services to address her substance abuse and an

additional six months would not prepare her for full-time parenting. For his part, Izet has made some progress in understanding E.M.'s dietary needs, but too many concerns remain about his ability to appropriately supervise his granddaughter. On this record, we cannot find that a delay in permanency is warranted.

### B. Guardianship Option

The mother and grandfather next argue that instead of terminating Azra's parental rights, the juvenile court should have established a permanent guardianship with Izet. Azra points to the strong bond between E.M. and her grandfather. Izet contends "if there is a family member waiting in the wings who is willing and able to provide for the child, termination is not appropriate."

Our supreme court has reiterated: "[G]uardianship is not a legally preferable alternative to termination." *See In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018); *but see In re B.T.*, 894 N.W.2d 29, 34 (Iowa Ct. App. 2017) (approving order for guardianship with grandmother rather than terminating mother's parental rights where "mother and the grandmother [had] a close, mature, and healthy relationship that is free of conflict").

Here, the juvenile court found returning E.M. to Izet's home posed the same risk of harm that existed at the time of her removal. Under these circumstances, we agree creating a guardianship with the grandfather would not be in E.M.'s best interests. *See* Iowa Code § 232.116(2) (describing best-interests test). As the juvenile court concluded, "the best place for further the long-term nurturing and growth of the child is in an adoptive home."

**AFFIRMED ON BOTH APPEALS.**