In the Interest of R.K.B., Minor Child,

K.K.B., Father, Appellant,

P.M.H., Mother, Appellee.

No. 97–300.

Supreme Court of Iowa.

Jan. 21, 1998.

Joseph D. Thornton of Smith Peterson Law Firm, Council Bluffs, for appellant.

Mary Lee Skaff, Omaha, NE, for appellee.

Brian Rhoten, Council Bluffs, for minor child.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

HARRIS, Justice.

One of Iowa's eight statutory grounds for terminating the parent-child relationship is the failure, without good cause, to pay court-ordered child support. Iowa Code § 600A.8(4) (1997). This appeal tests the sufficiency of evidence to justify termination on this ground. The district court found the evidence justified termination and we agree. We hence vacate a contrary decision by the court of appeals and affirm.

Michelle H. and Kevin B. are the parents of Ryan, born in October 1991. Michelle and Kevin never married. Although they lived together for two months following Ryan's birth, at no time did Kevin participate in caring for him. Ryan's paternity was established by decree, and in June 1992 an order was entered requiring Kevin to pay $100 per month in child support.

Kevin's record for support under this order has been dismal. He paid $475 in 1993, and $303 in 1994 ($53 of which was an involuntary offset from a tax refund). He paid nothing between August 16, 1994, and October 13, 1996, and paid only $100 during 1996 after Michelle brought this proceeding to terminate his parental rights. As of trial date in January 1997, he owed $4522 in delinquent child support. Michelle has been on state aid part of this time because she could not pay for all the child care expenses. Michelle brought this termination proceeding under Iowa Code section 600A.8(4) based on Kevin's failure to pay child support without good cause.

During the past five years Kevin has worked intermittently at his mother and stepfather's heating and air conditioning business and does so at the present time. He has also undertaken part-time mainte-nance and contracting jobs. Kevin's mother testified that, although she prepared the W-2 forms for Kevin, she had "no idea" what Kevin's gross income was in 1994 or 1995. Like the district court we think this lack of knowledge regarding Kevin's gross income is not credible.

There was scant trial testimony concerning Kevin's employment and ability to pay ordered support. The court nevertheless concluded the evidence supported a finding of failure, without good cause, to pay the ordered support. The matter is before us on further review of a court of appeals holding to the contrary.

I. Termination proceedings are reviewed de novo. Iowa R.App. P. 4; *In re M.M.S.*, 502 N.W.2d 4, 5 (Iowa 1993). Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses. Iowa R.App. P. 14(f)(7); *In re M.M.S.*, 502 N.W.2d at 5. The primary interest in termination proceedings is the best interests of the child. Iowa R.App. P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

> We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re C.M.W.*, 503 N.W.2d 874, 875 (Iowa App.1993) (quoted source omitted).

II. A district court is empowered to terminate parental rights upon a petition by a parent. Iowa Code §§ 600A.5(1)(a), 600A.9. The court may grant the petition upon a finding that the "parent has been ordered to contribute to the support of the child ... and has failed to do so without good cause." Iowa Code § 600A.8(4). The burden is on the petitioner to show the parent

had the ability to pay child support. *In re D.E.E.*, 472 N.W.2d 628, 630 (Iowa App. 1991).

We described the meaning of "without good cause" in *In re B.L.A.*, 357 N.W.2d 20, 21–22 (Iowa 1984). We indicated "the key factual issue ... concerns the father's ability to pay the ordered child support." *In re B.L.A.*, 357 N.W.2d at 22. Although it is not necessary for the petitioner to show that the parent was willful in failing to pay, the parent's intent is clearly tied to an ability to pay. *Id.; see Klobnock v. Abbott*, 303 N.W.2d 149, 152 (Iowa 1981) ("[T]he legislature intended termination for nonsupport to occur where a parent's failure to pay manifests indifference to a child and is therefore akin to abandonment."); *see also In re Kelley*, 262 N.W.2d 781, 785 (Iowa 1978) (inability at times to pay support ordered in view of willingness to let the public support daughter does not amount to good cause).

We share the district court's reaction to Kevin's complaint that the record is weak. By reason of his employment, Kevin and his family hold the key to how much he can earn, and they absolutely control all information regarding his actual earnings. The fact that Kevin and his family have control of this evidence does not shift the burden of proof on the point away from Michelle. But it does cast some light on how the other evidence in the record should be viewed. Although not directly on point, the situation is somewhat akin to the rule raising an inference of unfavorability when evidence under the control of a party is not produced in circumstances that would naturally call for its production. *Quint–Cities Petroleum Co. v. Maas*, 259 Iowa 122, 127, 143 N.W.2d 345, 348 (1966).

We also agree with the district court that the record indicates an ability to pay far more than Kevin did, as demonstrated by what the court laconically referred to as Kevin's "new-found" ability to pay. Although his employment circumstances had not changed, Kevin testified he could make a $500 downpayment and then subsequently pay $150 a month in child support. On this record Kevin failed without good cause to pay court-ordered child support for Ryan. The district court was correct in so finding.

III. In order to prevail, Michelle must also show termination is in Ryan's best interests. *In re B.L.A.*, 357 N.W.2d at 23. Michelle wins this point in a rout. Kevin has demonstrated a personal indifference toward Ryan; most of the association between Kevin and Ryan was initiated by Kevin's mother. It seems to have been at her instance that Kevin had visitation with Ryan at all. Kevin himself has done very little to affirmatively parent Ryan. The last time Kevin saw Ryan, in September 1996, Ryan did not even recognize him.

Kevin also has had problems with his temper and emotional stability. Although he denies it, he was physically abusive toward Michelle and also toward another woman who is the mother of Kevin's other child. Michelle filed police reports and requested protection orders on the basis of Kevin's conduct. Often the threats and episodes of physical violence were in Ryan's presence. Michelle also testified that Kevin repeatedly made suicide threats and threatened to kill her.

Ryan's behavior changed for the better during the approximate eighteen months preceding trial, a period during which Kevin had not seen him. Ryan was much happier and less troublesome. Michelle is happily married and, at the time of the trial, was expecting a child. Her husband spends a substantial amount of time with Ryan and they have an excellent relationship. Ryan considers Michelle's husband to be his father. The husband has assumed Ryan's support and wishes to adopt him.

The district court correctly concluded that termination is in Ryan's best interest.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**