# IN THE COURT OF APPEALS OF IOWA

No. 15-1664
Filed April 27, 2016

**IN THE INTEREST OF A.J.,**
**Minor Child,**

**D.N., Mother,**
    Petitioner-Appellee,

**R.A., Father,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

The father appeals the district court's termination of his parental rights to his child, A.J., pursuant to Iowa Code chapter 600A (2015). **AFFIRMED.**

Daniel M. Northfield of Daniel Northfield Attorney at Law, Urbandale, for appellant father.

Elizabeth A. Kellner-Nelson of Kellner-Nelson Law Firm, P.C., West Des Moines, for appellee mother.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**VOGEL, Judge.**

The father appeals the termination of his parental rights to his daughter, A.J. He asserts the court improperly concluded the mother established grounds to terminate his rights under Iowa Code section 600A.8(3) and (4) (2015), and it is not in the child's best interests that his rights are terminated. Because of the father's complete absence from the child's life, as well as his failure to provide support without good cause, the grounds for termination were proved by clear and convincing evidence; furthermore, termination is in the child's best interests. Therefore, we affirm the order of the district court.

**I. Factual Background**

A.J. was born in 2011. Other than driving the mother to the hospital when she was in labor and visiting the mother and child the following day, the father has had no contact with the child. The mother began a relationship with another man when A.J. was one year old. The couple began cohabitating in October 2013, and they were married in December 2014. The mother petitioned to terminate the father's parental rights on March 25, 2015, and a hearing was held on September 24, 2015. After the hearing concluded, the district court made detailed findings on the record and followed with a written ruling, which granted the petition. The father appeals.

**II. Standard of Review**

Termination proceedings under chapter 600A are reviewed in the same manner as proceedings under chapter 232, de novo. *In re Kelley*, 262 N.W.2d 781, 782 (Iowa 1978). Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering the credibility of

witnesses. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). The primary interest in termination proceedings is the best interests of the child. *Id.*

## III. Termination under Iowa Code section 600A.8(3)

Iowa Code section 600A.8(3) provides termination can occur if:

> 3. The parent has abandoned the child. For the purposes of this subsection, a parent is deemed to have abandoned a child as follows:
>
> . . . .
>
> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The father's position at trial was that from the time of her pregnancy, the mother maintained A.J. was not his child. He claimed that as soon as a January 2015 paternity test concluded that he was the father, he took steps to start a relationship with the child. However, the mother testified that when she informed the father she was pregnant she also informed him that he was the father. The father testified he and the mother went back and forth as to undergoing paternity testing for a few years but could not agree as to who would pay for the test. The district court found not credible the father's statement that he had not had contact with the mother in the year leading up to A.J.'s birth. The paternity test proved

the father was not being truthful. The court also found the father denied paternity, "largely because he did not want to pay child support." We defer to the district court's credibility findings, particularly here where the facts clearly belie the father's position. *See R.K.B.*, 572 N.W.2d at 601 (noting we defer to the credibility findings of the district court).

Moreover, an order dated May 30, 2012, established the father as the legal father of A.J. and set his support obligation to $105 per month. Although the father had notice of the paternity action as to A.J., he failed to participate in the action and his paternity was judicially established.[1] His claim he had no knowledge A.J. was his child was not credible to the district court nor is it credible to us on our de novo review. Consequently, we affirm the finding the father abandoned A.J. pursuant to Iowa Code section 600A.8(3).

**IV. Termination under Iowa Code section 600A.8(4)**

The father also claims the mother did not prove grounds to terminate under Iowa Code section 600A.8(4), which provides termination can occur when: "A parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause." He asserts he has been paying child support since July 6, 2012. The father was already ordered to pay support for another child, C.J., born in 2008, who is A.J.'s full sibling.[2] The May 30, 2012 order not only established the father's paternity to

---

[1] In December 2014, prior to the paternity testing, the father petitioned the court to overcome paternity.
[2] Although the father initially denied paternity of C.J., he submitted to paternity testing in March 2009.

A.J. but also modified his then-support obligation for C.J. to include A.J., for a total support order of $105 each month.

The child support records entered into evidence showed the father had paid less than one-half of the court-ordered child support for A.J. In defending his lack of financial support, the father testified he was disabled due to a bad back, had applied for Social Security disability in 2009 or 2010, and was "still fighting it." He testified he had an "AA degree" and admitted he had the ability to at least earn minimum wage but that he only worked five to ten hours a week. The district court found the father was able to make a living wage yet had failed to support A.J. On our de novo review, we agree with those findings and conclude the termination of the father's parental rights was supported by clear and convincing evidence under Iowa Code section 600A.8(4).

**V. Best Interests of the Child**

Finally the father asserts it is not in A.J.'s best interests that his parental rights be terminated. His primary assertion is that it would be detrimental to A.J. to have the father's rights terminated while the father has a relationship with A.J.'s full sibling, C.J. The district court took into consideration the guardian ad litem's recommendation against termination under "the unique circumstances of this case," in spite of her acknowledgement that the father "may have known from the beginning that A.J. was in fact his child." The district court found:

> This child does not know [the father]. This child does not recognize [the father] as her dad. He's never stepped up and acted as her father. [The mother's husband] is the father figure in A.J.'s life. He wants to adopt this child and provide this child with a family forever. And it may be confusing to both [C.J.] and [A.J.] as they grow up, but these families are good people. They can figure it out. They can deal with that and minimize the damage. And just overall the

Court finds that A.J.'s best interest would be served by this termination of parental rights.

We agree the record supports the district court's conclusion it is in A.J.'s best interests the father's rights are terminated. The father is a stranger to A.J. He abandoned her and failed to pay much in the way of support, without good cause. His desire to maintain his parental rights comes too late, given he has demonstrated little to no effort to be a father since A.J.'s birth. *See R.K.B.*, 572 N.W.2d at 602 (noting termination was in the child's best interests given the father was not involved in the child's life and the child did not recognize him as his father). The mother's husband, who has been a part of A.J.'s life since she was one year old, and whom A.J. knows as "daddy," now wants to adopt her. We agree with the district court the best interests of A.J. are served by terminating the father's parental rights.

**AFFIRMED.**