**IN THE COURT OF APPEALS OF IOWA**

No. 16-2076
Filed May 3, 2017

**IN THE INTEREST OF J.H.,**
**Minor Child,**

**J.H., Father,**
     Petitioner-Appellee,

**A.H., Mother,**
     Respondent-Appellant.
_____


Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.


A mother appeals from the termination of her parental rights.  **AFFIRMED.**


Taryn R. Purcell of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant.

Patricia M. Reisen-Ottavi of Ottavi Law Firm, Dubuque, for appellee.

Victoria D. Noel of Mayer, Lonergan & Rolfes, Clinton, for minor child.


Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**DANILSON, Chief Judge.**

A mother appeals from the termination of her parental rights to her child on the petition of the child's father alleging the mother abandoned the child pursuant to Iowa Code section 600A.8(3)(b) (2016). The mother contends the juvenile court erred in finding she abandoned the child, and argues termination of her parental rights is not in the child's best interest. We conclude there is clear and convincing evidence the mother abandoned the child and termination is in the child's best interest. We therefore affirm.

### I. Background Facts & Proceedings.

The child, J.H., was born in 2006 and was ten years old at the time of the termination hearing. The mother and father were never married, and they separated shortly after J.H. was born. Initially, the parties informally agreed J.H. would live with the mother and the father would have visitation. However, due to the mother's husband's interference in visitation, the father filed an action seeking physical care in 2010. A decree placing physical care with the father and providing visitation to the mother was entered on April 18, 2011.

In 2013, the department of human services (DHS) became involved with the mother's family because it was learned the mother's husband was using and dealing illegal substances in the family home, one of the children in the home tested positive for illegal substances, and there were concerns of domestic violence. The mother's parental rights to her two other children were terminated in 2015 because the mother could not protect her children by honoring a no-contact order and staying away from her husband.

A founded child abuse assessment was also completed with respect to J.H. in 2013. The assessment identified the mother's husband as the responsible person for denial of critical care stemming from his use of illegal substances in J.H.'s presence. J.H.'s father subsequently placed limitations on the mother's exercise of visitation, requiring that she not take J.H. to her home or any place where the mother's husband may be. The father offered visitation with J.H. at the father's home, at the home of the mother's parents, and at the home of the father's parents. The mother testified she felt "uncomfortable" visiting J.H. at the father's home. Therefore, at the time of the October 28, 2016 termination hearing, the mother had visited J.H. only twice since December 2014. The mother had not seen J.H. at all since the fall of 2015—approximately one year prior to the termination hearing. Although the mother was provided with J.H.'s basketball schedule, the mother did not attend any games.

The mother also made only sporadic attempts to communicate with the father and J.H. The father testified the mother would sometimes go thirty days without making contact. The father further testified in the year preceding the termination hearing, there would be gaps of as long as ninety days in communication with the mother

"Sporadic" also describes of the mother's effort to provide financial support. The mother was ordered to pay the father $80 per month in child support, but made inconsistent payments by way of automatic withholding during periods when she was employed. Over the period of about five years between

the 2011 decree and the 2016 termination hearing, the mother paid approximately $4300 in child support.[1]

The father is remarried. J.H.'s stepmother testified at the termination hearing she and J.H. have a good relationship. The stepmother shares in the responsibility of parenting J.H., and has developed a bond with J.H. The stepmother testified she would like to adopt J.H. if the mother's parental rights are terminated.

The guardian ad litem (GAL) provided a report to the court in which she stated J.H. expressed great fear of the mother's husband. J.H. also expressed fear about the possibility of going to live with the mother if something happened to the father. The GAL also reported that "after the interview, it was very clear [J.H.'s] desire in this case, which is for the court to grant the termination of parental rights for [the] mother and to be adopted by [the] stepmother."

At the time of the termination hearing, the mother was living in a family friend's apartment. The mother has mental-health issues including depression, anxiety, and ADHD, which she does not manage with medication as recommended. The mother acknowledged her husband was abusive and her children were afraid of him, and yet she repeatedly violated the no-contact order and kept her husband in the children's lives. The mother testified she is no longer in contact with her husband, but remains married to him. The mother reported she has a new paramour and is considering living with him in the future. The mother testified her new paramour has prior criminal charges and has had

---

[1] This included $642.35 in 2011, $1005.53 in 2012, $281.50 in 2013, $1602 in 2014, $258.04 in 2015, and $518.11 in 2016.

his parental rights to a child terminated, but she does not know what the criminal charges are or the reasons for the termination.

As to visitation with J.H., the mother testified:

> Q. What do you believe to have been the longest block of time that you went without—between seeing or visiting with [J.H.]? . . . . A. Probably, like, a year and a half maybe.
> Q. And during that year and a half, you could have done visits at the [father]'s home or your dad's home or [the father]'s mother's home, but you felt uncomfortable. A. Correct.

The juvenile court determined the mother's "efforts were insufficient to maintain substantial and continuous or repeated contact" with J.H. and termination was in J.H.'s best interest. The court entered an order terminating the mother's parental rights on November 23, 2016. The mother now appeals.

**II. Standard of Review.**

We conduct a de novo review of termination proceedings under chapter 600A. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa 2010). "We accord weight to the factual findings of the juvenile court, especially those regarding witness credibility, but we are not bound by them." *Id.* Our paramount consideration is the best interest of the child. Iowa Code § 600A.1.

**III. Analysis.**

The mother asserts there is not clear and convincing evidence she abandoned J.H., and contends termination is not in J.H.'s best interest.

Iowa Code section 600A.8(3)(b) provides grounds for termination when there is clear and convincing evidence a parent has abandoned a child six months of age or older

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward

support of the child of a reasonable amount, according to the parent's means, and as demonstrated by . . . [v]isiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child . . . [or] [r]egular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

To her credit, the mother did render modest child support payments sporadically throughout the child's life when the mother was employed and had the means to provide support. However, the juvenile court found the mother did not maintain substantial and continuous contact with the child within the meaning of section 600A.8(3)(b). We agree.

Although the location of the mother's visitation was limited to protect the safety of the child, the mother was provided opportunities to visit with J.H. and only did so on two occasions in 2015. By the time of the termination hearing in October 2016, the mother had not visited J.H. in approximately one year.

The mother contends the father prevented her from participating in visitation with J.H. However, the father did not refuse visitation. Rather, he provided alternatives to the mother to ensure J.H.'s safety during visits. The mother testified she objected to visiting J.H. at the father's house because it was uncomfortable for her. But the father offered two other locations for visitation, and the mother never initiated any court action after the decree was entered to enforce her visitation rights. Further, it seems likely that DHS may have intervened if the mother exercised visitation in her home when her husband was present.

The mother also did not maintain continuous communication with J.H. or the father, at times making no attempt to contact them for thirty or even ninety days. The mother did not take advantage of the opportunities provided to her to see her child, and certainly was not visiting with J.H. on a monthly basis or maintaining regular communication. We therefore find the juvenile court properly determined there were grounds for termination under Iowa Code section 600A.8(3)(b) on the basis that the mother failed to maintain "substantial and continuous or repeated contact with the child."

We also conclude termination of the mother's parental rights is in J.H.'s best interest. Iowa Code section 600A.1 provides:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of a continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

In evaluating J.H.'s best interest, the juvenile court stated:

> [The mother] testified that she is no longer in a relationship with [her husband], even though they remain married. The court gives little weight to [the mother]'s testimony in this regard, given her documented dishonesty regarding her relationship with [her husband].
> Even if she is no longer in a relationship with [her husband], her protective capacities are still called into question. [The mother] testified she is currently in a relationship with an individual who has his own criminal history issues and had his parental rights terminated, but she was unsure why. [The mother] is currently homeless and sleeps on the couch of a family friend. The residence appears to be a duplex in which [the mother]'s uncle was arrested on drug charges. . . . [The mother] testified it was her intention to move out of the apartment and either into the Maria House or in with her new boyfriend. [The mother]'s unstable

lifestyle, prior termination of her parental rights, and volatile relationships remain a concern.

In evaluating the child's best interest, "[w]e look to the child's long-range, as well as immediate, interests." *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998) (citation omitted). The mother has not demonstrated appropriate decision-making skills with regard to her relationships. The mother did not take the necessary steps to protect her children from her husband, resulting in the termination of her parental rights to her other two children and DHS involvement and a founded child-abuse report with respect to J.H. The decisions by the mother have negatively impacted J.H., causing J.H. a great deal of fear and uncertainty as to whether she would be protected by the mother in the future. Additionally, the mother has not exhibited the ability to provide a safe and stable environment for J.H. The mother did not have a suitable residence at the time of the termination hearing and was engaging in a relationship with a new individual with a criminal history. The mother has not demonstrated a genuine effort to show a continued interest or maintain a place of importance in J.H.'s life.

Alternatively, the father and stepmother have provided a safe and stable environment for J.H. The stepmother has acted as a caregiver for J.H. and expresses a desire to adopt J.H. The father brought the petition for termination to facilitate the stepmother's adoption of J.H. in order to allow J.H. to feel secure and know that she will not be placed back in a frightening environment with her mother. We agree with the juvenile court that

> [g]iven that [the stepmother] has assumed the role of full-time parent for [J.H.], and is willing to do so on a permanent basis through adoption, . . . termination would also be in the best interest

of the child as it will best meet [J.H.]'s long-term nurturing and growth, and her physical and emotional needs.

We agree that termination of the mother's parental rights is in J.H.'s best interest.

**IV. Conclusion.**

We conclude there is clear and convincing evidence the mother abandoned J.H. within the meaning of Iowa Code section 600A.8(3)(b), and termination of the mother's parental rights is in J.H.'s best interest. We therefore affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**