**IN THE COURT OF APPEALS OF IOWA**

No. 21-0313
Filed October 20, 2021

**IN THE INTEREST OF K.D.,**
**Minor Child,**

**J.P., Mother,**
    Appellee,

**K.D., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Korie L. Talkington, District Associate Judge.

A father appeals the district court ruling terminating his parental rights in a private termination proceeding. **AFFIRMED.**

Jennifer M. Olsen of the Olsen Law Firm, Davenport, for appellant father.

Rebecca C. Sharpe of Aitken, Aitkin & Sharpe, P.C., Bettendorf, for appellee mother.

Kristina K. Lyon of Gomez May Law, Davenport, Attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

A father appeals the district court order terminating his parental rights in a private termination proceeding. There is clear and convincing evidence to show the father abandoned the child and termination of his parental rights is in the child's best interests. We affirm the decision of the district court.

## I.      Background Facts & Proceedings

K.D., father, and J.P., mother, are the parents of K.J.D., born in 2009. The parties lived together for a period of time in Illinois but never married. The parents' relationship was unstable. They separated for a final time in 2011, and the mother and the child moved to Davenport, Iowa. The father remained in Illinois. The father visited the child in Davenport.[1]

In March 2012, the father and an acquaintance of the mother were involved in a physical altercation outside the mother's home. Both men were hospitalized. The father received stab wounds and the mother's acquaintance was charged and convicted of a crime as a result of the fight. The paternal grandparents picked the father up from the hospital and asked to have the child visit for a few days. The mother agreed. She testified the father then refused to return the child. The following Monday, the mother obtained a protection order.[2] The order was filed March 20, 2012.[3] The order of protection granted the mother custody of K.J.D.

---

[1] The father testified that he did not have a driver's license for about ten years. He took the bus to Davenport and the mother picked him up at the bus station. Prior to March 2012, he stayed at the mother's home while visiting the child.

[2] The father consented to the entry of the order of protection.

[3] The father filed a paternity action in April 2012. He did not follow through with this action because he obtained visitation through the protection order, and the paternity action was dismissed in May 2013.

The father was awarded visitation rights and ordered to pay child support. Officers accompanied the mother to the paternal grandparents' home to retrieve the child.

The parties followed the protection order during the one year when it was in effect.[4] When the year ended, the father quit paying child support. The mother was unable to afford continuing to drive the child for visits, as was required by the protection order. The mother obtained a new telephone number after the father stopped paying the cellphone bill. She did not provide the new number to the father. She also blocked him on Facebook. The father has not seen the child since May or June 2013.

On September 5, 2014, the father filed a petition in Illinois for custody and visitation but did not follow through with it.[5] On February 17, 2015, the mother filed a petition for termination of the father's rights in Iowa. The father's rights were terminated, but the termination ruling was set aside on March 23, 2016, because the father was not properly served. The mother dismissed her termination petition. The father moved to Texas for a year and then New York for a year. He did not attempt any contact with the child for two years and two months while he was out of the area.

The father moved back to Illinois and then filed a custody petition in Iowa on May 1, 2018. He stated he did not know the mother's whereabouts after his last visit with the child in 2013. However, the record established the mother and the child remained in the same home the father had visited through June 1, 2015,

---

[4] The mother got married in October 2012. She has two children with her husband.
[5] The mother was not served with notice because the Scott County Sheriff's Department was unable to locate her. However, the mother was living at the home the father had previously visited to exercise visits with K.J.D.

and then moved to a different home in Davenport. The father testified his attorney hired an investigator to locate the mother in order to serve her with the petition.

On June 7, 2018, the mother filed a second petition for termination of the father's parental rights on the ground of abandonment under Iowa Code section 600A.8 (2018).[6] In August, the mother unblocked the father on Facebook. The mother did not allow visits after the filing of the termination petition, given the pending hearing and the length of time since the father had seen the child. Subsequent to the filing of the second petition for termination, the father provided gifts for the child to the mother's attorney that were not delivered. He did not send cards or gifts directly to the child, although he knew where the child was living during the pendency of the termination case.

Due to the Covid-19 virus and other factors, it took more than a year to conclude the termination hearing. The hearing took place on November 13, 2019; August 6, 2020; and January 4, 2021. At the last hearing date, the child was eleven-years-old and the father had not seen her since she was four-years-old.

On February 10, 2021, the district court terminated the father's parental rights under section 600A.8(3)(b). The court found:

> Clear and convincing evidence has been presented to this Court that [the father] has abandoned his child as defined by [section] 600A.8(3)(b). He has not had contact with the child since 2013. Sporadic attempts at contact, despite knowing where the child and mother were residing, is abandonment. [The father] has not supported his child financially. He has not paid any support since 2013 or 2014, despite having the means to do so. The only letter, card, money or gifts to the child were delivered to the mother's attorney in 2018. Otherwise, he has never acknowledged her birthday, Christmas or other holidays.

---

[6] The action filed by the father was stayed while the termination proceedings were pending.

> The obstructions by [the mother] were not the sole reason for his lack of contact or support. [The father] knew the address where his child was living, even if he did not have the mother's phone number or the ability to contact her electronically. [The mother] does not have a legal obligation to encourage contact between the child and her father. In his heart, [the father] may not have abandoned his child, but he did so by his lack of action between the last time he saw her and the filing of his custody petition in May 2018. The court must judge his efforts and actions to maintain contact and the actions he took to keep himself part of his child's life. He failed to maintain substantial or continuous contact with his child.
>
> Termination of [the father's] parental rights is in the child's best interests. The child does not remember him. He has not emotionally, physically, or financially supported her in 7 years.

The father appeals the district court order.

## II.      Standard of Review

Private termination proceedings under chapter 600A are reviewed de novo. *In re G.A.,* 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *In re H.S.,* 805 N.W.2d 737, 745 (Iowa 2011). In termination proceedings, our primary concern is the best interests of the child. Iowa Code § 600A.1(1); *In re R.K.B.,* 572 N.W.2d 600, 601 (Iowa 1998).

## III.      Termination of Parental Rights

Private termination proceedings under Iowa Code chapter 600A are a two-step process. *See* Iowa Code §§ 600A.1, .8. The moving party must first prove by clear and convincing evidence the grounds for ordering termination of parental rights. *See id.* § 600A.8. For the second prong, the moving party must prove by clear and convincing evidence that termination is in the best interest of the child. *See R.K.B.,* 572 N.W.2d at 602.

**A.** The father contends there is not clear and convincing evidence in the record to support termination. He contends that he attempted to maintain contact with the child but the mother prevented him from visiting the child. He asserts that he wanted to keep in regular communication with the child. He states that because he did not know where the mother was living, or her telephone number, and was unable to contact her through Facebook, he was unable to establish visitation or contribute financially.

Section 600A.8(3) provides:

> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The phrase "[t]o abandon a minor child" is defined to

> [m]ean[] that a parent, putative father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(20). A parent's subjective intent "does not preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(3)(c).

We find the father made only marginal efforts to communicate with the child or provide for support of the child. *See id.* § 600A.2(20). The father filed a petition for custody in Illinois in 2014, although he was aware the mother had recently been living in Iowa. He did not take any further steps to pursue the action. He did not take any further action until May 2018, when he filed a petition for custody in Iowa. He moved out of the area for a period of two years and two months, living in Texas and New York, and did not attempt to have contact with the child during this time. Furthermore, the father did not voluntarily provide any regular support for the child. He paid child support when required to do so in the protection order but then stopped once the order expired in 2013. The financial needs of the child did not abate when the protection order ended but the father sent her only a few presents in subsequent years. We conclude the father abandoned the child within the constructs of the statute and his parental rights were properly terminated on this ground under section 600A.8(3)(b).

**B.** The father contends termination of his parental rights is not in the child's best interests. He states he was an active parent in the child's life until May or June 2013, when he last saw the child. He attributes his failure to further participate in the child's life to the mother. The father acknowledges that it would take a period of time to reintegrate him into the child's life after the extended period of time he was absent from her life.

Section 600A.1(2) states:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations,

demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

As noted above, the father made only minimal efforts to financially support the child, except for the period of time when he was required to pay support under the protection order. Although he filed actions to establish custody and visitation, he did not follow through with those actions prior to the most recent one in 2018. When his initial efforts to maintain contact with the child were thwarted by the mother, the father ceased communication for a lengthy period of time. He left the area for more than two years and did not make any efforts to maintain communication with the child during that time. The father has not established or maintained "a place of importance in the child's life." *See id.* § 600A.1(2). After the passage of seven years, the father is a stranger to this child. She views her mother's husband as her father. We conclude termination of the father's parental rights is in the child's best interests. We affirm the decision of the district court.

**AFFIRMED.**