**IN THE COURT OF APPEALS OF IOWA**

No. 23-0527
Filed July 13, 2023

**IN THE INTEREST OF S.H., L.H., A.H., and P.H.,**
**Minor Children,**

**L.H., Mother,**
      Appellant.
_____


Appeal from the Iowa District Court for Des Moines County, Emily Dean, District Associate Judge.


A mother appeals the termination of her parental rights to four children.
**AFFIRMED.**


Kyler D. Massner of Cray Law Firm, P.L.C., Burlington, for appellant mother.

Brenna Bird, Attorney General, and Mary A. Triick (until withdrawal) and Mackenzie Moran, Assistant Attorneys General, for appellee State.

Heidi D. Van Winkle of Van Winkle Law Office, Burlington, attorney and guardian ad litem for minor children.


Considered by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

This case involves four children under the age of ten. The juvenile court terminated the parental rights of their mother—Laura—largely because of her drug use and dishonesty.[1] Challenging that ruling, Laura raises four issues. (1) Did the State prove by clear and convincing evidence that the children could not be returned to her care? (2) Was the juvenile court correct in declining to delay permanency for six months? (3) Was termination of her parental rights in the children's best interests? (4) Was termination a better option than a guardianship?[2] Because we answer "yes" to all four questions, we affirm.[3]

Laura has five children. Her oldest son just turned eighteen. He was raised by his grandmother in Texas. The termination order involves the four younger children: P.H. (born in 2013); A.H. (born in 2014); L.H. (born in 2017); and S.H. (born in 2019). The Iowa Department of Health and Human Services removed them from Laura's custody in December 2021 when she was using methamphetamine while caring for them.

---

[1] The court also terminated their father's parental rights. He does not appeal.

[2] The mother's attorney lists these four complaints under a single heading in her petition on appeal. The body of her argument does not separate them out, hindering our ability to analyze each issue.

[3] Our review is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We recognize that the juvenile court is in a better position to determine witness credibility. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). And we respect the juvenile court's fact findings. *L.B.*, 970 N.W.2d at 313. But they do not dictate our result on legal questions. *Id.* The State must prove the grounds for termination by clear and convincing evidence. *Id.* Our polestar is the children's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

That incident was not the department's first encounter with the family. L.H. tested positive for illegal substances at birth. And Laura was using methamphetamine while pregnant with S.H.

After the 2021 removal, the department placed the three sisters—P.H., A.H., and S.H.— with a family friend. Their brother, L.H., was placed with an aunt. They remain with those caregivers, who ensure the siblings stay in regular contact.

Laura's struggle with substance abuse is long-standing. She recalled trying marijuana at age twelve and then cocaine and methamphetamine at age fourteen. She's tried in-patient treatment at least six times with varying levels of success. In fall 2022, she was successfully discharged from the Sioux City Rosecrance Jackson Center with the understanding that she would follow up with outpatient treatment at Alcohol & Drug Dependency Services (ADDS) in Burlington. But Laura did not go for outpatient treatment at ADDS—though she told the department that she did. In the words of the juvenile court: "Laura has not been honest whatsoever that she is attending outpatient treatment which was recommended following her inpatient treatment."

Her lack of candor continued. The social worker recalled troubling conversations with Laura in mid-December 2022 and early January 2023. Laura's eyelids were "very heavy," she slurred her words, and she jumped from subject to subject—leading the worker to believe she was under the influence. But Laura denied using drugs. Seeing her lack of progress in addressing her substance abuse, the State petitioned to terminate Laura's parental rights in January 2023. The juvenile court granted the petition following a March 2023 hearing. The court

terminated her rights based on Iowa Code sections 232.116(1)(f) and (h) (2023). She now appeals.

**Statutory Ground/Deferred Permanency**. In passing, Laura suggests that the State failed to offer clear and convincing evidence that the children could not be safely returned to her custody at the time of the termination hearing. *See* Iowa Code §§ 232.116(1)(f)(4), (h)(4); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("The record does not provide any evidence that D.W. could safely be returned home with A.W. at the time of the termination hearing."). But her bottom line is that she "was deserving of an extension." *See* Iowa Code § 232.104(2)(b) (allowing juvenile court to postpone termination for up to six months if the need for removal will no longer exist). We reject both notions.

Laura claims to have been drug-free for over three months. But that claim is belied by the record. In the months right before the termination hearing, Laura continued to show behavioral signs of drug use and continued to need substance-abuse treatment. The State offered proof that she hadn't yet achieved the stability to be a trustworthy caregiver for the four children. And she hasn't made the strides needed to show that this goal could be reached in the next six months.

**Best Interests/Closeness of Parent-Child Relationship**. Laura next raises a best-interests challenge under Iowa Code section 232.116(2). In considering whether termination is in the children's best interests, we give "primary consideration" to their safety, "to the best placement for furthering [their] long-term nurturing and growth," and to their "physical, mental, and emotional condition and needs." Iowa Code § 232.116(2). We may also consider their integration into their foster families. *Id.* § 232.116(2)(b).

Laura believes the juvenile court ignored her close bond with the children. She acknowledges missing visits with them. But she contends it was appropriate to do so when she was under the influence. We find cold comfort in Laura's decision to not come to visits while high. It was her drug use that subjected the children to instability and trauma. They agonized about her well-being. For example, A.H. said the social worker's kids were "lucky they don't have to worry about drugs." Meanwhile, they are doing well in their current placements, which intend to maintain the bond between the siblings. Given these facts, termination was in the children's best interests.

**Guardianship**. As a final thought, Laura urges that the juvenile court should have preserved her parental rights and placed the children in a guardianship with her mother in Texas. Our supreme court has rejected the notion that guardianships are a better long-term option than termination. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). And it is not the preferable path here. The department social worker testified that these children—after so much upheaval in their lives—need a "permanent solution" not afforded by a guardianship. We agree. After our de novo review, we affirm the juvenile court's decision to terminate Laura's parental rights.

**AFFIRMED.**