**IN THE COURT OF APPEALS OF IOWA**

No. 23-0576
Filed December 20, 2023

**IN THE INTEREST OF A.M.,**
**Minor Child,**

**M.E., Mother,**
    Petitioner-Appellant,

**J.K., Father,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Tama County, Casey D. Jones, District Associate Judge.

A mother appeals the district court's decision denying her request to terminate the parental rights of her child's biological father. **AFFIRMED.**

Kenneth P. Nelson of Nelson Law Firm, PLLC, Waterloo, for appellant mother.

Melissa A. Nine of Nine Law Office, Marshalltown, for appellee father.

Jennifer L. Chase of Ball, Kirk & Holm, P.C., Waterloo, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A mother appeals the district court's decision denying her request to terminate the parental rights of her child's biological father. We determine the mother did not meet her burden to show by clear and convincing evidence that the father abandoned the child. Accordingly, we affirm the district court's decision.

## I.      Background Facts & Proceedings

M.E. is the mother and J.K. is the father of A.M., born in 2019. The mother and father "were never married, have never lived together, and have never had a significant relationship with each other." After the birth of the child and genetic testing that established that J.K. was the biological father, the mother and father agreed to work out issues of visitation and support without the involvement of the courts. This informal arrangement did not work well. The mother often denied visitation to the father when requested. And the mother was frustrated by the timing of the father's requests.[1]

The mother married B.E. in July 2022 and wanted her husband to adopt A.M. On October 17, 2022, the mother filed a petition seeking to terminate the father's parental rights on the ground of abandonment under Iowa Code

---

[1] As an example, one of the text strings reads: Mother: "Just thought I would let you know that this Sunday is not going to work." Father: "Why not I thought every other weekend was the plan." Mother: "I don't need to explain myself."

And another text message: Father: "Hey how is little miss doing and may I see her this weekend." Mother: "She's good and I got a lot going on this weekend with her so probably not gonna work but I'll let ya know." Father: "I didn't say it had to be Sunday." Mother: "And I just said I have family things Saturday [B.E.]'s Sunday my moms Friday my dad so no [J.K.]."

section 600A.8(3)(b) (2022). In response, the father filed an answer in the termination file and also petitioned for custodial rights and visitation.[2]

A hearing on the termination petition was held on February 28, 2023. The evidence showed that although the father had problems with alcohol until September 2020, he has been sober since that time. He currently lives with his sister and her three children, located about forty-five minutes from the mother's home. He is employed on a seasonal basis by a company that performs landscaping and snow removal and is paid $16.50 per hour.

The father testified, "I have tried to set up, prior to this, a schedule that I could have visitation and everything prior to all of this happening and was denied." He stated that he reached out to the mother requesting visitation, but she usually denied his requests. His last visit with the child was in August 2021. The father stated he had given the mother $2000 cash for the child. In addition to the money, the father testified, "I was paying for diapers and everything as needed for two years, and then once I was getting denied is when I stopped." He stated there were occasions when he offered money or supplies to the mother and she indicated she did not want it. In particular, he stated that once the mother became involved with B.E., she no longer accepted financial assistance from the father.

The mother testified there were times she denied visitation to the father because, "I already had plans or we had my stepson." The mother's husband had a son from a prior relationship who came to their home every other weekend and

---

[2] The filings in the separate custody proceedings are not part of the record on appeal. The petition in the custody file was signed by the father in November 2021 but not filed until January.

every Wednesday. The mother testified that she did not permit visitation by the father while the stepson was at her house. The mother did not allow the father to have visitation outside of her home, so his visits were always supervised. She denied preventing communication between the father and the child. The mother disagreed that the father had given her $2000; she stated the father gave her $100 and the paternal grandfather gave her $1000. She testified the father had given the child some birthday and Christmas presents. The mother offered an exhibit detailing the dates and times the father had visits but acknowledged this exhibit did not contain the times that the father had requested visitation and been denied, nor did it contain the times the father contacted the mother to communicate about the child.

The district court entered an order denying the mother's petition to terminate the father's parental rights. The court found the mother "prevented [the father] from seeing the child on multiple occasions." The court concluded the mother had not met her burden to show the father abandoned the child within the meaning of section 600A.8(3). The court also found termination of the father's parental rights was not in the child's best interests, noting the father was "able to be a loving, caring, and stable parent for [the child]." The mother appeals the district court's decision.

## II.       Standard of Review

Private termination proceedings under chapter 600A are reviewed de novo. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *In re H.S.*, 805 N.W.2d 737, 745

(Iowa 2011). In termination proceedings, our primary concern is the best interests of the child. Iowa Code § 600A.1(1); *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).

### III. Termination of Parental Rights

Private termination proceedings under Iowa Code chapter 600A are a two-step process. *See* Iowa Code §§ 600A.1, .8. First, the moving party must prove by clear and convincing evidence the grounds for ordering termination of parental rights. *See id.* § 600A.8. Second, the moving party must prove by clear and convincing evidence that termination is in the best interest of the child. *See R.K.B.*, 572 N.W.2d at 602.

The mother claims there is evidence in the record to show the father abandoned the child. The applicable law on abandonment in private termination proceedings is found in section 600A.8(3):

> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Section 600A.2(20) defines the phrase "[t]o abandon a minor child" to mean:

> [A] parent, putative father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

A parent's subjective intent "does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c).

The mother contends she provided sufficient evidence to show the father abandoned the child. She asserts the father did not contribute to the support of the child in a reasonable amount. *See id.* § 600A.8(3)(b). The mother also claims the father did not do enough to keep in contact with the child. *See id.*

The father provided some cash financial support for the child, although the parties do not agree as to the amount. The mother did not dispute that she received "toys, clothes, diapers, wipes, and other items for the child" from the father. The court determined the father's evidence about the support he had provided for the child was "substantially true." We give weight to the court's credibility findings. *See In re H.N.M.*, No. 17-1802, 2018 WL 2731643, at *2 (Iowa Ct. App. June 6, 2018). The court found that while the father could have provided more support, the mother "has never asked for child support and may have even rejected some of [the father's] offers of support."

On the contact issue, the court found that throughout 2021 and into early 2022, the father reached out to the mother more than thirty times "inquiring about [the child], requesting a visit, or offering money or other items for [the child]." The mother conceded there were times she denied visitation to the father because, "I already had plans or we had my stepson." The mother gave preference to her own plans over the father's visitation with the child and denied his requests for visits.

The mother also imposed restrictions on the visitation, requiring all visits to be in her home under the supervision of herself or her husband.

A finding of abandonment may be negated by evidence the person having custody of the child prevented visitation or communication. *See id.* at *4. The court found there was "clear and convincing evidence that [the mother] has prevented [the father] from seeing the child on multiple occasions." We find the evidence supports the court's findings. We determine the mother did not meet her burden to show by clear and convincing evidence that the father abandoned the child within the meaning of section 600A.8(3)(b). And because we are affirming the district court's determination that the mother did not meet her burden of proof about the statutory grounds for abandonment, we do not reach the best interest argument.

We affirm the district court's decision denying the mother's petition to terminate the father's parental rights.

**AFFIRMED.**