# IN THE COURT OF APPEALS OF IOWA

No. 24-0505
Filed July 23, 2025

**IN THE INTEREST OF S.E. and B.E.,**
**Minor Children,**

**A.T., Mother,**
    Petitioner-Appellee,

**J.E., Father,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Guthrie County, Virginia Cobb, Judge.

A father appeals the termination of his parental rights to his children under Iowa Code section 600A.8(3) (2022).  **AFFIRMED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Pleasant Hill, for appellant.

Scott B. Lyon and Stephen A. Neve of Hope Law Firm & Associates, P.C., West Des Moines, for appellee.

Kolby Warren of McCormally & Cosgrove P.L.L.C., Des Moines, attorney and guardian ad litem for minor children.

Considered without oral argument by Tabor, C.J., Sandy, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**DOYLE, Senior Judge.**

A father appeals the termination of his parental rights to his children under Iowa Code section 600A.8(3) (2022). He contends that there is insufficient evidence that he abandoned the children and termination is not in the children's best interests. We review his claims de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).

The mother and father began a relationship in 2011. They married in 2013 and share two children. They separated in late 2016 after the father assaulted the mother while she was holding the younger child, who was still an infant. In the wake of their separation, the mother stayed at different shelters before moving to Tennessee due to her belief that the father and his friends were stalking her. She moved back to Iowa early in 2018. The father had no contact with the children from the time he and the mother separated until several months after the mother returned to Iowa.

In December 2019, the mother petitioned to dissolve the marriage. The court entered a decree dissolving the marriage in June 2020, granting joint legal custody of the children and placing them in the mother's physical care. The decree provided a schedule for the father to visit the children and ordered him to pay $287 per month in child support.

The mother learned that the father was incarcerated in December 2021. He is serving a twelve-year sentence for possession of methamphetamine and has not yet been provided with a discharge date. He last visited the children in August 2021 and owes the mother $7727.91 in child support.

In March 2022, the mother petitioned to terminate the father's parental rights, alleging that he abandoned the children. The guardian ad litem recommended termination. In March 2024, after three hearings, the court granted the mother's petitions and terminated the father's parental rights to the children.

Private termination actions under chapter 600A involve a two-step process. *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018); *see* Iowa Code §§ 600A.1, .8. First, the mother must "show by clear and convincing evidence a threshold event has occurred that opens the door for potential termination of parental rights." *Q.G.*, 911 N.W.2d at 770. If she succeeds, the mother must then show by clear and convincing evidence that termination is in the children's best interests. *See id*.

Beginning with the threshold event, we consider whether the evidence shows that father abandoned the children. Abandonment occurs when a parent "rejects the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(20). Under section 600A.8(3)(b), the court can terminate parental rights of children age six months or older

> unless the parent maintains substantial and continuous or repeated contact with the child[ren] as demonstrated by contribution toward support of the child[ren] of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child[ren] at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child[ren].
> (2) Regular communication with the child[ren] or with the person having the care or custody of the child[ren], when physically and financially unable to visit the child[ren] or when prevented from visiting the child[ren] by the person having lawful custody of the child[ren].

(3) Openly living with the child[ren] for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child[ren].

A subjective intent to continue the parent-child relationship is not enough without evidence of the acts outlined in section 600A.8(3)(b)(1)–(3). *See id.* § 600A.8(3)(c).

Clear and convincing evidence shows that the father abandoned the children. On the support issue, the district court found that the father's "financial contributions have been minimal. He doesn't really dispute that claim; in fact, he is so unaware of that responsibility that he claims not to know he has a significant arrearage in his court-ordered child support obligation." The court next found that the father failed

to maintain substantial and continuous or repeated contact with the children by visiting the children or having regular communication with the children. The visitation stopped when [the father] was incarcerated, but he could have maintained contact in other ways. According to his own testimony, [the father] only sent each child one letter during the course of his incarceration. He claims that he tried to call but believes that [the mother] just wouldn't pick up the phone. [The mother] denies this, and there is no support for that claim. At one point, [the father] attempted to go to court to have his child support obligation reduced or eliminated but did nothing to try to have his visitation enforced.

Following a de novo review, we agree that the mother proved the father failed to meet the requirements set forth in section 600A.8(3)(b). Thus, the first step in the termination process is met.

We turn then to the children's best interests. *See In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998).

The best interest of [the children] requires that each biological parent affirmatively assume the duties encompassed by the role of

being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child[ren], demonstration of a genuine effort to maintain communication with the child[ren], and demonstration of the establishment and maintenance of a place of importance in the child[ren]'s life.

Iowa Code § 600A.1(2). We may also look to the framework described in Iowa Code section 232.116, *see In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010), which requires that we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]," Iowa Code § 232.116(2).

Clear and convincing evidence shows that the children's best interests are served by terminating the father's parental rights. The father has had no contact with the children for more than a year due to his "serious criminal issues that have caused him to be incarcerated." He has not taken affirmative steps to change his lack of contact with the children. But even when the father was visiting the children, he was unable to reliably meet their needs, including feeding them. A child abuse assessment by the Iowa Department of Health and Human Services determined that allegations of denial of critical care and dangerous substances were founded against the father for using methamphetamine and abusing his girlfriend while the children were in his care. Those concerns about the father's substance use and domestic violence persist. And the children have been harmed by the father. As the guardian ad litem reported, the older child stated he does not want a relationship with the father; he wants to see the father to express his anger and then never see him again.

Meanwhile, the mother has remarried and has children with her husband. The district court noted that the children are "doing very well in the care of their mother" and "have benefitted from their relationship with . . . their stepfather," who is directly involved in their care. The younger child, who has been diagnosed with autism spectrum disorder and was largely nonverbal, had an immediate connection with his stepfather and enjoys "a very close relationship" with one of his half-siblings. Since this new family unit was formed and the mother began homeschooling the children, the younger child has made remarkable progress. As the guardian ad litem noted, "When I first met [B.E], he hardly said any words, but is now interacting and saying simple sentences and having short, simple conversations." The older child calls the stepfather "dad" and states that he loves the child "like a dad."

Because the mother met her burden of showing the father abandoned the children and termination is in their best interests, we affirm the termination of his parental rights.

**AFFIRMED.**