# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0935
Filed April 1, 2026

———————————

**In the Interest of L.K., Minor Child,**

**L.K., Mother,**
Petitioner-Appellee,

**D.K., Father,**
Respondent-Appellant.

———————————

Appeal from the Iowa District Court for Woodbury County,
The Honorable Stephanie Forker Parry, Judge.

———————————

**AFFIRMED**

———————————

John S. Moeller of John S. Moeller, P.C., Sioux City, attorney for appellant
father.

Lindsey Buchheit of Buchheit & Ehrich Law, PLC, Sergeant Bluff, attorney
for appellee mother.

Rosalynd Koob, Sioux City, attorney and guardian ad litem for minor child.

———————————

Considered without oral argument
by Chicchelly, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

A father appeals the private termination of his parental rights to his six-year-old son under Iowa Code chapter 600A (2025).[1] At the time of the March 2025 termination hearing, the father had not seen the son since 2023. And despite a court-ordered child-support obligation of $100 per month since 2019, the father had paid only $500—without good cause for the failure to pay more of the nearly $7,000 balance owed in over five years. The father has also struggled with substance use and engaged in much criminal conduct throughout the son's life. So the juvenile court granted the mother's petition to terminate the father's rights for abandoning the son and failing to pay child support under Iowa Code sections 600A.8(3) and 600A.8(4).

On appeal, the father challenges both grounds for termination and argues that termination is not in the son's best interest. But on our de novo review, we agree with the juvenile court. The mother proved at least one ground for termination by showing the father has failed to pay court-ordered child support without good cause. And given the father's criminal behavior, his drug use, and his lack of interest in parenting his son, it is in the son's best interest to terminate the father's parental rights. We thus affirm the juvenile court's termination of the father's parental rights.

## I.    Background Facts and Proceedings

The father and mother married in 2014 and had a son together in 2018. But their relationship soon deteriorated. And the mother petitioned to dissolve their marriage in early January 2019—their son was six months old.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code § 600.16A, *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

Although the father was unemployed and at home able to care for the son while the parties were together, the mother instead sent the son to daycare because she "had concerns at that point regarding [the father's] behavior and [she] didn't feel comfortable leaving [the son] with him all day." The mother explained that the father was "[s]leeping a lot. Using Marijuana. Playing a lot of video games." And she "was afraid that he wouldn't be attending to [the son]" if the son was left in the father's care.

The divorce was finalized in April 2019. The parties were granted joint legal custody of the son, and he was placed in the mother's physical care with gradually increasing visitation for the father. But since then, the father has had limited contact with the son—in part because of his criminal activity. The father has been convicted of many crimes—including, among others, drug, theft, and burglary offenses. His arrests and convictions have resulted in many stints in Iowa and South Dakota jails and prisons from 2020 to 2025. And at the time of the termination hearing, the father still had unresolved criminal charges and an active South Dakota arrest warrant for failing to appear for a court hearing.

When he was not incarcerated, the father had sporadic visits with the son, especially in 2019, 2020, and late 2022. The father's last interaction with the son was a visit in January 2023. In 2023 and 2024, the father reached out in spurts, calling and texting the mother repeatedly for multiple days in a row. But he did so inconsistently with long periods of no contact. And the mother had genuine concerns about letting the son around him considering the father's drug use and repeated criminal activity. She testified that because of the father's "substance abuse, the criminal activity, [and] who he engages with," she was afraid that the son would be in danger.

The father has also failed to pay his court-ordered child support. In the dissolution decree, the court ordered him to pay $100 in monthly support. But he admitted that he has only paid $500—all in 2019—leaving nearly $7,000 unpaid at the time of the hearing. The mother contends—and the father does not contest—that he made this payment only because he was required to do so before he could receive half of the proceeds from the sale of the marital home. And the father has been employed since 2019.

What's more, the father has unresolved substance-use issues. The mother testified that he often used marijuana and she believed he was manufacturing and using methamphetamine. He has been convicted of many drug offenses. And as recently as February 2025, he tested positive for THC, methamphetamine, amphetamine, and MDMA (ecstasy) despite previously completing multiple court-ordered drug rehabilitation programs.

The juvenile court held a hearing on the petition to terminate the father's parental rights in March 2025. It heard testimony from the mother, her new partner, the son's grandmother, and the father. And in its later written ruling, the court terminated the father's parental rights under subsections 3 and 4 of Iowa Code section 600A.8. The court found that "the child's father has not maintained substantial and continuous or repeated contact with [the son], despite being given the opportunity" and that the father "has been ordered by the Woodbury County District Court to pay child support for [the son] and he has failed to [do] so without good cause." The court also found that it would be in the son's best interest to terminate the father's parental rights.

The father now appeals, challenging all these findings.

## II.    Ground for Termination

Private actions to terminate parental rights are a two-step process. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). First, a petitioner must show "clear and convincing" evidence that one or more grounds for termination exist. *See* Iowa Code § 600A.8. Second, the petitioner must prove that termination is in the child's best interest. *See id.* § 600A.1. We review these issues de novo, though "we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *B.H.A.*, 938 N.W.2d at 232 (cleaned up).

The juvenile court relied on two statutory grounds for termination. And the father appeals both. But if the juvenile court terminates a parent's rights under multiple grounds, we may affirm so long as one ground is supported by sufficient evidence. *See In re Kelley*, 262 N.W.2d 781, 784–85 (Iowa 1978). So we focus on whether the mother established grounds under section 600A.8(4) by proving by clear and convincing evidence that the father failed to pay court-ordered child support without good cause.

Termination is authorized under section 600A.8(4) when "[a] parent has been ordered to contribute to the support of the child . . . and has failed to do so without good cause." The failure to pay must be "substantial, and not merely sporadic or insignificant." *Klobnock v. Abbott*, 303 N.W.2d 149, 152 (Iowa 1981). This is because such a substantial failure "manifests indifference to a child and is therefore akin to abandonment." *Id.*; *see also Kelley*, 262 N.W.2d at 785 ("A parent who unjustifiably refuses to meet a support obligation manifests complete indifference to his child."). To decide whether a parent had good cause justifying the failure, we mainly focus on the parent's ability to pay. *See In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998).

In the dissolution decree, the court ordered the father to pay $100 per month in child support starting in April 2019. But he paid only $500—which he had to do in 2019 to receive his share of the proceeds of the marital home. So as of the March 2025 termination hearing, he owed nearly $7,000. The father's failure to pay 93% of his total court-ordered child support—and to pay *nothing* for over five years—is a substantial failure.

On appeal, the father admits that he "is not current in his court ordered child support obligation," but he claims that he "lacks the ability" to pay "due to his extended periods of incarceration." The evidence says otherwise. Like the juvenile court, we find that the father had the ability to pay and thus lacks any good cause to justify his failure. Despite periodic incarceration, the father testified that he has been employed at least since 2023. And he told the son's guardian ad litem that he has been employed since 2019. He also received half the proceeds from the sale of the marital home. Still, he has not paid any child support since 2019. Thus, clear and convincing evidence supports terminating the father's rights under section 600A.8(4) for his failure to pay child support without good cause.

## III.    The Son's Best Interest

The father also challenges the second step of the analysis—whether termination is in the son's best interest. He argues that he developed a bond with the son before being incarcerated and that "he desires to resume parenting."

When deciding the best interest of the son under chapter 600A, we must consider "whether a parent has affirmatively assumed the duties of a parent." Iowa Code § 600A.1(2); *see B.H.A.*, 938 N.W.2d at 232. To that end, we may consider the father's "fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine

effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." Iowa Code § 600A.1(2). And we "borrow[] from the statutory best-interest framework outlined in Iowa Code chapter 232." *B.H.A.*, 938 N.W.2d at 232. So we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

Considering these factors, we agree with the juvenile court that termination is in the son's best interest. The father has not fulfilled his financial obligations to the son. He has committed many crimes over the past five years, and like the mother, we believe this poses a risk to the son's safety. His criminal convictions are a product of his own choices and show a lack of desire to assume the duties of a parent.

What's more, his lengthy criminal history includes repeated drug offenses, and witnesses testified to his frequent drug use. As recently as the month before the hearing, he tested positive for many drugs. Indeed, the father has consistently prioritized his drug use over being a parent to his son.

Finally, the son is in a stable and loving home with his mother and her partner. His mother's partner has been a father figure for the son and intends to adopt him. The son's guardian ad litem requested that the court terminate the father's rights and noted that the son is thriving socially and academically. We see no reason to deny termination based on the hope that the father will one day change his ways after having nearly five years to do so.

**AFFIRMED.**