# IN THE COURT OF APPEALS OF IOWA

No. 23-0929
Filed August 9, 2023

**IN THE INTEREST OF K.D.-R.L.,**
**Minor Child,**

**K.D., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Joan M. Black, District Associate Judge.


        A mother appeals the termination of her parental rights to her one-year-old son. **AFFIRMED.**


        Caleb T. Detweiler of Honohan, Epley, Braddock & Brenneman, LLP, Iowa City, for appellant mother.

        Brenna Bird, Attorney General, and Mackenzie L. Moran, Assistant Attorney General, for appellee State.

        Katherine Reidy Abel, Tipton, attorney and guardian ad litem for minor child.


        Considered by Tabor, P.J., Buller, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**TABOR, Presiding Judge.**

"It's like he was glued to her, essentially, and if she got away, especially because they were homeless, he could find her within a couple days." That power-and-control dynamic described by the service provider prevented K.D.-R.L.'s mother from escaping her abuser, the child's father. The juvenile court acknowledged the impact of domestic violence on the mother's ability to safely care for her one-year-old son. But the court declined to defer permanency for the child, finding termination of parental rights in his best interests.[1] After our independent review of the record, we reach the same result.[2]

## I.    Facts and Prior Proceedings

By her own admission, while pregnant with K.D.-R.L., the mother used methamphetamine every other day, including the day she went into labor. She believed using was "something she had to do" when the child's father was around. Not surprisingly, at his birth in April 2022, K.D.-R.L.'s umbilical cord tested positive for that drug.[3] Fearing his removal from her custody, the mother voluntarily placed K.D.-R.L. with the father's adult daughter, T.M. The parents rarely saw K.D.-R.L. that spring or summer while he stayed with T.M.

---

[1] The court terminated both parents' rights. The father does not appeal.

[2] We review termination decisions de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We recognize that the juvenile court is in a better position to determine witness credibility. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). And we respect its fact findings. *L.B.*, 970 N.W.2d at 313. But they do not dictate our result on legal questions. *Id.* Our polestar is the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

[3] That month, the mother had a substance-abuse evaluation that recommended in-patient treatment, but she did not follow up.

In late 2022 and early 2023, the Iowa Department of Health and Human Services scheduled visitation for the mother. But she missed many visits and reported using drugs because of domestic violence and pressure from the father. The mother began to make progress only after the father went to jail in early February. She found a job and a new apartment. She also completed a substance-abuse evaluation that recommended intensive outpatient treatment. But by then, the State had petitioned to terminate parental rights.

At the termination trial in April, the mother conceded she was not ready to resume custody of her son. She testified that she would need a couple of months to start substance-abuse treatment and "get a little more work with someone regarding domestic violence."

The department case worker was not as optimistic about the mother's prospects. First, the mother was not addressing her drug addiction. She tested positive for methamphetamine, cocaine, and THC in late February and positive for methamphetamine and THC again in March. Second, the worker believed that the mother needed a mental-health evaluation and treatment to address the trauma of being a victim of domestic violence. The worker pointed to the mother's history of violent relationships—the court terminated her parental rights to another child in 2015 when she was involved with a different abusive partner. Third, the mother only recently started attending visits regularly. But there were signs of a positive relationship with K.D.-R.L.

The juvenile court recognized that the mother made some progress since the father's corrosive influence had lessened. But the court reasoned that "the last-minute, minimal gains" did not merit postponing permanency for K.D.-R.L.

The mother appeals, contending she can now show "her true ambition and abilities to parent after she finally escaped her abuser."  The guardian ad litem (GAL) filed a response to her petition on appeal, defending the termination decision.  The GAL pointed to the mother's lack of progress in addressing her long-standing addiction, even after the father's incarceration.  The State seconded the GAL's position.

## II.  Analysis

The mother does not challenge the statutory grounds for termination.  Instead, she contends termination was not in K.D.-R.L.'s best interests and asks for six more months to reunify with her son.

In deciding whether termination is in K.D.-R.L.'s best interests, we give top attention to his safety; to the placement that would best further his long-term nurturing and growth; and to his physical, mental, and emotional condition and needs.  *See* Iowa Code § 232.116(2) (2023).

First, we address the safety concerns.  Granted, the father's incarceration freed the mother from his control and influence for the short term.  Yet at termination hearing, she testified she did not have a no-contact order, believing it would "make him madder than he already would be."  On top of that concern, the mother continued to test positive for methamphetamine in the months when the father was jailed and no longer pressuring her to use.  She also had delayed starting the recommended outpatient substance-abuse treatment.

To grant a parent more time to achieve reunification, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from

the child's home will no long exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). That enumeration was impossible here. Rather, the court found: "Given her lengthy addiction history and documented recent use, her consistent pattern of involvement with violent men, and her pattern of not addressing her mental health concerns, it is clear that reunification could not take place in the foreseeable future."

After our de novo review of the record, we agree with the court's decision to terminate parental rights rather than defer permanency. The mother's separation from her violent partner is positive. But her continued substance abuse, even after the father's incarceration, does not instill confidence that she would become a safe parent in six months, after years of involvement with the department. *See In re A.A.G.*, 708 N.W.2d 85, 93 (Iowa Ct. App. 2005) (considering "uncertainty about parent's sobriety").

The record shows that the mother is not the best placement for K.D.-R.L.'s short-term or long-term nurturing and growth. Rather, it is in his best interests for the termination order to stand so that he can move toward adoption.

**AFFIRMED.**