# IN THE COURT OF APPEALS OF IOWA

No. 24-1819
Filed January 23, 2025

**IN THE INTEREST OF Z.C.,**
**Minor Child,**

**K.C., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, Judge.

A mother challenges the termination of her parental rights to her one-year-old son. **AFFIRMED.**

Deborah M. Skelton, Pleasant Hill, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Robin O'Brien Licht, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

A teenage mother, K.C., appeals the order terminating her parental rights to one-year-old Z.C. She contends the State did not offer clear and convincing evidence that her son could not be safely returned to her custody. She also maintains that preserving her parental rights is in Z.C.'s best interests and the juvenile court should have denied the State's petition given the closeness of the parent-child relationship. After reviewing the record, we reach the same conclusions as the juvenile court: Z.C. cannot be returned to her custody, termination is in the child's best interests, and the risks that he would face if returned to K.C. "would far outweigh the trauma caused by the termination."[1] Thus, we affirm.

## I. Facts and Prior Proceedings

When K.C. gave birth to Z.C. in early July 2023, she was herself still adjudicated as a child in need of assistance (CINA). As part of her own CINA case, she was diagnosed with several psychological conditions, including attention-deficit hyperactivity disorder, post-traumatic stress disorder, unspecified bipolar disorder, conduct disorder, and reactive attachment disorder. Beyond those diagnoses, her May 2022 evaluation identified substance-abuse concerns and a mild intellectual disability. That same year, K.C. was placed in shelter, detention,

---

[1] On de novo review, "we examine the whole record, find our own facts, and adjudicate rights anew." *In re M.H.*, 12 N.W.3d 159, 160 (Iowa Ct. App. 2024) (citation omitted). We respect the juvenile court's factual findings, especially when they rest on witness credibility. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). But they are not binding on us. *Id.* Our primary concern is the best interests of the child. *Id.*

and a psychiatric medical institute for children, before being returned to the care of her mother.

About two weeks after giving birth to Z.C., K.C. told her case manager that she felt overwhelmed, and her mother reported that K.C. "got in [her] face while holding the baby then took him and said she was leaving." K.C.'s mother also worried that her teenage daughter was "going after random guys" and treating "the baby [as] kind of [an] afterthought." Concerned about the infant's welfare, the Iowa Department of Health and Human Services sought to remove Z.C. from his mother's custody. The court approved the removal and adjudicated Z.C. as a CINA in late July 2023. The department placed Z.C. in foster care, where he has remained since his removal.

Early in the case, K.C. regularly attended supervised visits with Z.C., breast feeding during the twice-weekly sessions and pumping between visits. As Z.C. grew, K.C. came to visits prepared with formula and pureed food. The department acknowledged their strong bond. But as the case progressed, K.C. missed many of Z.C.'s medical appointments because she struggled to find transportation. As the juvenile court noted, she "remained completely dependent on others to meet her basic needs."

The department also expressed concern about her "lack of boundaries with men." Her caseworker suspended her video visits with Z.C. at his foster-care home in February 2024 when she allowed her paramour—who was not approved to interact with Z.C.—to join a FaceTime call with her son. Between the disposition and permanency hearings, K.C. became pregnant, but she miscarried after an ATV accident in which she suffered serious injuries. By summer 2024, K.C. started

missing visits with Z.C. because the department would not allow her to bring her boyfriend along. In October, a man she called her "ex-boyfriend" was jailed on a weapons-related charge. She posted on the Linn County inmate website that they should "free my Baby Daddy." But at the termination trial, she denied being pregnant or continuing to have a relationship with him.

K.C.'s sporadic drug testing was also an issue for the department. She was called to test eighty-one times during Z.C.'s CINA case, but "no-showed 55 times." Of the tests she took, one was positive for methamphetamine and three were positive for marijuana. When asked at the termination hearing why she avoided drug testing, she responded: "Because what's the point?"

As for her mental health, K.C. acknowledged at the hearing that she recently spent six days in the hospital for psychiatric treatment. But she insisted that her treatment providers did not recommend any medication management, saying: "They knew I was fine." The juvenile court found her testimony on this point to be "evasive and argumentative and not credible."

In its November order, the court terminated K.C.'s parental rights under Iowa Code section 232.116(1)(h) (2024). She challenges that order on appeal.

## II. Analysis

In termination cases, our courts follow a three-step process. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, we must decide whether the State proved by clear and convincing evidence a ground for termination under section 232.116(1). *Id.* Second, we consider whether termination was in the child's best interests under the framework of section 232.116(2). *Id.* Third, if the State meets those two prongs, we consider the permissive exceptions in section 232.116(3). *Id.*

**A. Statutory Ground for Termination**

On the first step, K.C. disputes the State's proof for paragraph (h) under section 232.116(1). That ground requires clear and convincing evidence that (1) the child was three years old or younger; (2) he had been adjudicated as a CINA under section 232.96; (3) he had been removed from the parent's physical custody for at least six months of the last twelve months, or for the last six straight months and any trial period at home was less than thirty days; and (4) he could not be returned to her custody "as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h); *see also In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (interpreting "present time" as the date of the termination hearing).

K.C. concedes that the State satisfied the first three elements. But on the fourth element, she asserts: "Testimony established that at the time of trial, [she had] stable housing, a source of income, [was] working toward obtaining her high school diploma, and [was] a loving and nurturing parent." It is true that K.C. was earning credits toward her graduation and that she interacted well with Z.C. during most supervised visits. However, the record belies her other claims. On housing, K.C.'s situation was far from stable; she had been staying with a friend for a few months until "she [got] on her feet." And social security was her only form of income.

Ultimately, sound judgment and overall stability remained elusive for K.C., who was only nineteen at the time of the hearing. She was not careful about her romantic partners, she did not attend to her fragile mental health, and she failed to cooperate with drug testing. *See M.H.*, 12 N.W.3d at 162 (affirming termination

though father "exhibited good parenting skills during fully supervised visits"). Termination of K.C.'s parental rights was proper under paragraph (h).

## B. Best Interests

On the second step, K.C. argues:

> There is no authority that allows the State to terminate a parent-child relationship where the child loves the mother, the mother loves the child, the mother can meet the physical and emotional needs of the child, and placement with the mother poses no appreciable risk of adjudicatory harm to the child.

Again, while parts of her argument are valid, we disagree that K.C. can meet Z.C.'s physical and emotional needs on her own.

Under the best-interests framework, we emphasize the child's safety; the best placement for furthering his long-term nurturing and growth; and his physical, mental, and emotional condition and needs. *See In re A.B.*, 957 N.W.2d 280, 300 (Iowa 2021) (discussing Iowa Code section 232.116(2)). Given her own childhood traumas, ongoing substance use, and extensive mental-health diagnoses, K.C. cannot offer Z.C. the stability he needs. Termination of her parental rights serves Z.C.'s best interests because it allows him to move toward a steady future.

## C. Permissible Exception

Finally, K.C. alleges that the court should have exercised its discretion to dismiss the State's petition because Z.C. is bonded to her. *See* Iowa Code § 232.116(3)(c). For that exception, a parent must show by "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c). Granted, K.C. has been prepared for visits and forged a connection with her son. The juvenile court noted that Z.C. "appears to be bonded with [K.C.], but the inconsistency of

her contact in the latter part of the case has eroded this bond." As this case has progressed, we do not find clear and convincing proof that severing their legal relationship would cause Z.C. harm. So we decline to apply this permissive exception. *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021).

**AFFIRMED.**