# IN THE COURT OF APPEALS OF IOWA

————————

No. 25-0294
Filed March 11, 2026

————————

**In the Interest of M.Y., Minor Child,**

**C.C., Mother,**
Petitioner-Appellee,

**A.Y., Father,**
Respondent-Appellant.

————————

Appeal from the Iowa District Court for Story County,
The Honorable Hunter W. Thorpe, Judge.

————————

**AFFIRMED**

————————

Jane M. White of Boles, Witosky & Stewart Law, Des Moines, attorney for appellant father.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, attorney for appellee mother.

Brian T. Bappe of Bappe Law Office, Nevada, attorney and guardian ad litem for minor child.

————————

Considered without oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

A father appeals the termination of his parental rights to one child M.Y., born in 2016, in a private termination action, arguing (1) there is not clear and convincing evidence that he abandoned the child under Iowa Code section 600A.8(3)(b) (2024) and (2) termination is not in the child's best interests. The father participated in the first three years of the child's life, but then contact became sparser because of his criminal activities. Prior to the termination hearing, the father had not contacted the child in over five years. And although the father was not required to pay child support under the 2018 dissolution decree, he has not provided any financial support for the child.

The father alleges the mother prevented communication between him and the child from the beginning of his incarceration. While the father has been incarcerated, the child bonded with the mother's new husband and refers to him as "dad." The new husband is hoping to adopt the child. Because the father has not made contact with or provided for the child in the last five years, we find the mother established that the father abandoned the child under section 600A.8(3)(b), and that it is in the best interest of the child to terminate the father's parental rights. Upon our de novo review, we affirm.

## I. Background Facts and Proceedings.

The father and mother had one child together, M.Y. (born 2016). The couple began living together in 2013 and married in 2016. Prior to the marriage, the mother was aware that the father had alcohol and substance-use problems and that he had been previously incarcerated.

In 2017, the father overdosed at home in the presence of the child and the child's older sibling.[1]  The older child called the mother and said that "he could not get [the father] off the floor."  When the mother arrived home, the father had been taken by an ambulance, and the children's aunt had retrieved them.  A founded child abuse report against the father stemmed from the incident.

After the incident, the parties separated and then divorced in 2018. The father claims that until he left the family home he helped care for the child.  Anticipating that the father was going to spend several years incarcerated, under the divorce decree, the mother had sole legal custody while the father was incarcerated.  When the father was not incarcerated, his visitation was to change to every other Saturday overnight and Wednesday evenings.  Additionally, related to his lack of income while incarcerated, the father was not ordered to pay child support.

Once the father moved out of the family home, he attended inpatient substance-use treatment and saw the child during his visitation.  He testified that he saw the child "as much as [he] could" but did not use all his visitation. His visits were not alone with the child as they occurred at his mother's house and she was present.  Testimony revealed that the father was occasionally unhoused.  The father provided some financial assistance when able during this time, but the mother testified that his contributions were not consistent.

The father testified the last time he had significant involvement in the child's life was when the child was three years old.  In 2019, the father was

---

[1] The older sibling is the mother's child and was in second grade at the time of the overdose.

4

sentenced to a term of imprisonment not to exceed five years on charges of possession of a controlled substance, third offense, a class "D" felony. In 2020, the father was incarcerated after his convictions of involuntary manslaughter, operating while intoxicated, third offense, possession of contraband in a facility, and possession of a controlled substance, third offense. He remained incarcerated at the time of trial, and the father's anticipated release date is July 17, 2028.

In February 2020, the mother re-married, and the child refers to the new husband as her "dad." The mother testified that the "goal of termination is adoption of" the child by her second husband. The husband testified that he is willing and able to adopt the child if the father's rights are terminated. He assists in parenting the child and has a parent–child like relationship with the child. He also testified that if the parental rights were not terminated, he would continue to have the same role in the child's life.

In September 2024, the mother petitioned to terminate the father's parental rights. A guardian ad litem (GAL) was appointed for the child. A trial was held in January 2025. At trial the mother testified that the father had not had any meaningful contact with the child in the past five years nor had he contributed financially in that time. Additionally, she testified that she tends to all of the child's needs, so the "goal of termination is adoption" of the child by her husband. At trial several witnesses gave testimony that the father and child have no meaningful relationship.

The father testified that the mother has prevented him from having a relationship with the child by prohibiting him from speaking with the child. He claims his mother and sister told him that he would not be able to have contact with the child. And that there is an "understanding" that the father's family is not supposed to talk about the father or his incarceration with the

child. He testified that he was unaware that he had the opportunity to seek intervention from the court to establish contact with the child while incarcerated.

The father testified that he completed a four-month treatment program focusing on criminal activity and drug use. He has also regularly attended Alcoholics Anonymous and Narcotics Anonymous meetings. At trial evidence was admitted showing the father's history of substance use and criminal violations. He testified that he had a parole hearing set for April 2025 but conceded that he has had his parole denied four times. He has also violated parole and probation in the past. The father did acknowledge that it would be at least several months from the time of trial until he was able to be personally present in the child's life.

Ultimately, the court terminated the father's parental rights under Iowa Code section 600A.8(3)(b).[2] The father appeals.

## II. Standard of Review.

"Private termination proceedings under [Iowa Code] chapter 600A are reviewed de novo." *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). We are not bound by the trial court's findings of fact, yet we give weight to them, "especially when considering credibility of witnesses." *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). "The primary interest in termination proceedings is the best interests of the child." *Id.*

---

[2] The mother also petitioned for the termination of the father's rights under section 600A.8(4), but the juvenile court dismissed this ground because the mother failed to prove the father was ordered to and failed to pay child support.

### III. Analysis.

When a parent has filed a private termination proceeding, we implement a two-step process under Iowa Code chapter 600.A. *See B.H.A.*, 938 N.W.2d at 232. First, a petitioner must show "clear and convincing" evidence that one or more grounds for termination exist. Iowa Code § 600A.8. Second, the petitioner must prove that termination is in the child's best interest. *Id.* § 600A.1."; *In re L.H.*, No. 24-1558, 2025 WL 1177879, at *2 (Iowa Ct. App. Apr. 23, 2025). The father challenges both steps, claiming that the mother did not prove abandonment and that termination is not in the child's best interest. We address each step in turn.

**A. Abandonment.** The father argues there was insufficient evidence of abandonment to support termination under Iowa Code section 600A.8(3). To establish abandonment the mother must show by clear and convincing evidence that the father has failed to maintain

> "substantial and continuous or repeated contact with the child." Substantial and continuous or repeated contact with the child is shown by: (1) financially contributing to the support of the child in a reasonable amount according to the parent's means ("cash"), and (2) maintaining sufficient contact with the child as defined in section 600A.8(3)(b)(1)–(3) ("contact"). For a parent to avoid being deemed to have abandoned the child, the parent must meet *both* the cash and contact components of the statute. So a petitioner need only prove by clear and convincing evidence that the parent failed to meet one of the two components, cash or contact, to establish the parent abandoned the child.

*In re G.D.*, No. 20-0984, 2021 WL 2126174, at *3 (Iowa Ct. App. May 26, 2021). Additionally, a parent's subjective intent to parent a child does not make up for a parent's lack of affirmative parenting to the extent they are able. *See In re Goettsche*, 311 N.W.2d 104, 106–07 (Iowa 1981). The juvenile court found that the mother met her burden of proof to show that the father did

not have meaningful contact with the child and he did not provide financial support to the child. Though the mother only needs to show one of the components under the statute we address both.

Beginning with contact, the record shows the father failed to maintain sufficient contact with the child as defined under the statute.[3] While the father has been incarcerated since 2020 and this would make physical visitation difficult, it would not prevent the father from making regular contact with the child. Here, he has not sent a letter or gift to the child during the time of his incarceration. The father admits that he has not had contact with the child in the last five years but blames his inability to do so because of his incarceration. But the father "cannot use his incarceration as a

_____

[3] The relevant part of the statute states:

> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b)(1)–(3).

justification for his lack of relationship with the child." *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). "This is especially true when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with a child." *Id.*

To address his lack of contact, the father argues that the mother "actively prevented him from having any contact with" the child. The mother testified that she did not initiate contact for the child with the father while he was incarcerated because she did not believe it was in the child's best interests. Nor did she allow his relatives to facilitate communication between the father and child. Additionally, she testified that there was only one instance when the father called to speak with the child and she denied it. This phone call occurred before the sentencing for his current period of incarceration, and she has not heard from him since. Other than the one instance, the father did not try to contact his child or ask the mother to facilitate contact for over five years.

The father testified that he was unaware of his right to seek legal intervention to communicate with the child. As noted by the juvenile court, the father failed to make even "marginal attempts to communicate with" the child. He has not attempted to make any contact for the mother to "prevent" in the last five years. The father's desire to be a parent to the child does not make up for his lack of action to parent the child. *In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) (recognizing a parent's subjective intent to parent does not preclude a finding of abandonment). Given our de novo review, we find the father has failed to maintain "regular communication with the child" as defined under section 600A.8(3)(b)(2). *In re Z.T.*, No. 23-0145, 2023 WL 6620514, at *3 (Iowa Ct. App. Oct. 11, 2023) (discussing communication and affirming a finding of abandonment when a father had sent letters to an

9

intermediary while incarcerated instead of communicating with the child or the other parent). The father's misguided belief that he could not seek legal intervention to contact the child does not excuse his five-year lack of contact.

Next, we consider the "cash" component of the statute. The father only makes about $30 a month while incarcerated and does not have the means to care for the child. Under Iowa law parents are still required to support their children even when incarcerated. *In re A.M.*, No. 02–1085, 2003 WL 21696957, at *2–3 (Iowa Ct. App. July 23, 2003) ("The general rule is that incarceration provides no excuse for an absent parent's failure to provide the comfort, guidance, and support owed by a parent to his children. . . . [C]ourts are notably unsympathetic toward self-created obstacles to supporting one's children."). While the father was not court-ordered to pay child support section 600A.8(3)(b) does not limit his parental obligation to contribution financially to the child's support. *In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012) (noting that court-ordered payments are subject to a separate provision under section 600A and that under section 600A.8(3)(b) even if there is no court-ordered support the parental obligation for support still exists). The father failed to communicate with the child for over five years and provided no support during that time, thus we affirm the abandonment finding.

**B. Best Interests.** The father argues that termination of his parental rights was not in the child's best interests. Here, the mother must prove by clear and convincing evidence that termination is in the best interests of the child. *E.g.*, *B.H.A.*, 938 N.W.2d at 232. Section 600A.1 sheds light on the term "best interest," including for the purposes of private termination proceedings:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Iowa Code § 600A.1(2). We also borrow "from the statutory best-interest framework outlined in Iowa Code chapter 232." *B.H.A.*, 938 N.W.2d at 232.

At the time of termination hearing the father was not scheduled to be released for several more years. His last contact with the child was when the child was three years old, and the child was eight years old at the time of trial. Though the father was up for parole it was uncertain if that would be granted and the father admitted even then it would be several additional months before he could be a part of the child's life again. Several witnesses testified that the father and child currently do not have a relationship as they have not been in contact for over five years. The father points to his accomplishments while he has been incarcerated. Additionally, the father claims that he has not engaged in behavior that would put the child at risk to support termination of his parental rights. Though we commend the father for his actions in addressing his substance use we find termination of his parental rights is in the child's best interests as she has had no relationship with the father for over five years.

At the trial the GAL opined that termination was in the child's best interests as the child had come to know the mother's husband "as her father figure." The GAL further stated that "I don't believe that it's in [the child's] best interests to continue to have this uncertainty around what [the child's] situation is going to be, moving forward. I do believe having some finalization

. . . and some permanency" is in the child's best interest and termination would accomplish that permanency.

In our best-interests analysis, we consider many factors including "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," "the child's emotional and psychological health," and "the closeness of the parent–child bond." *See B.H.A.*, 938 N.W.2d at 232. In doing so, we find it is in the best interests of the child to terminate the parental rights of the father so that the child may have permanency moving forward.

### IV. Conclusion.

Because the mother proved by clear and convincing evidence that the father abandoned the child under Iowa Code section 600A.8(3) and that termination of the father's parental rights is in the child's best interests, we affirm the termination of the father's parental rights.

**AFFIRMED.**